

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2002

# USA v. Zimmerman

Precedential or Non-Precedential:

Docket 1-1251

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Zimmerman" (2002). *2002 Decisions.* Paper 1.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/1

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 4, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1251

UNITED STATES OF AMERICA

v.

DAVID SCOTT ZIMMERMAN,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 99-cr-00110
District Judge: The Honorable Gary L. Lancaster

Argued October 17, 2001

Before: ALITO, BARRY and ROSENN, Circuit Judge s

(Filed: January 4, 2002)

        Robert E. Mielnicki, Esq. (Argued)
        Seewald, Swartz & Associates
        429 Fourth Avenue
        1600 Law & Finance Building
        Pittsburgh, PA 15219

        Attorneys for Appellant

Mary Beth Buchanan, Esq. (Argued)
Bonnie R. Schlueter, Esq.
Office of the United States Attorney
633 United States Post Office &
 Courthouse
Pittsburgh, PA 15219

Attorneys for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge:

On March 19, 1999, the Police Department in McCandless Township, Pennsylvania obtained a warrant to search the residence of appellant David Zimmerman for adult and child pornography. Several images of the latter were found, and Zimmerman was indicted for possession of child pornography in violation of 18 U.S.C. S 2252A(a)(5)(B). His suppression motion was denied, and he entered a conditional plea of guilty to the one-count indictment, preserving his right to appeal the issue of whether the search warrant that produced the damning evidence was supported by probable cause.

The warrant application did not contain any information indicating that Zimmerman ever possessed child pornography, much less that child pornography would be found in his home on March 19, 1999. While it did contain information that many months earlier, one video clip of adult pornography was in Zimmerman's home (or at least that Zimmerman had accessed it via the Internet from his home), that information was stale. Thus, we agree with Zimmerman that there was no probable cause to search for pornography -- child or adult -- in his home. We agree as well that, under the circumstances evident here, the good faith exception does not apply. We, therefore, will reverse the denial of the suppression motion and vacate the judgment of conviction and sentence.1
_____

1. Given this disposition, we need not decide the numerous other issues raised by Zimmerman, to wit: whether (1) the affidavit contained material

2

I.

David Zimmerman was a high school teacher and basketball coach in McCandless Township, Pennsylvania. Sergeant Donald O'Connor and Detective David DiSanti of the McCandless Police Department initiated an investigation after a number of Zimmerman's male students alleged that Zimmerman had sexually accosted them. Several boys stated that Zimmerman had forced them to simulate oral sex on his person, touched their genitalia, and talked to them about graphic sexual matters. A boy identified as John Doe #1 made particularly serious allegations and seemed to be the focus of much of Zimmerman's conduct. The mother of John Doe #1 played a very active role in the investigation of Zimmerman, sending detailed letters to school officials discussing the accusations against Zimmerman and recommending courses of action the school should take. She also communicated with the police to keep them informed of the school's investigation of Zimmerman. On March 4, 1999, Zimmerman was charged in the Court of Common Pleas of Allegheny County, Pennsylvania with two crimes: corruption of minors, in violation of 18 Pa. Cons. Stat. S 6301(a)(1), and simple assault, in violation of 18 Pa. Cons. Stat. S 2701(a)(1).

The investigation continued after Zimmerman was charged. On March 13, 1999, the police interviewed a college student identified as John Doe #12, the brother of John Doe #1. John Doe #12 stated that Zimmerman, on apparently one occasion, had shown him "Internet pornography" at Zimmerman's home when John Doe #12 was a senior in high school.[2] The pornography consisted of

_____

misstatements and omitted material information; (2) the warrant was overbroad; (3) the executing officers engaged in general rummaging; (4) Sergeant O'Connor violated the Municipal Police Jurisdiction Act, 42 Pa. Cons. Stat. S 8952, because he obtained and executed the warrant outside his "primary jurisdiction"; and (5) the hearing afforded Zimmerman by the District Court in and of itself warrants relief.
2. The affidavit does not indicate when John Doe #12 allegedly saw the pornography at Zimmerman's home. Assuming he was a freshman in college when the police interviewed him and that he graduated from high school in May 1998, John Doe #12 would have seen the clip at the very earliest ten months before the interview. It is quite possible that more time had elapsed.

3

a video clip that depicted a woman performing oral sex on a horse. John Doe #12 stated that another student, John Doe #13, was at Zimmerman's home when he showed the video clip. On March 18, 1999, the police questioned John Doe #13 and were told by him that he did not recall being shown pornography at Zimmerman's home.

When John Doe #13 did not corroborate John Doe #12's story about having been with him when the video of the woman with the horse was supposedly shown by Zimmerman, the officers called John Doe #12 to confirm what he had previously stated and to get additional details about the video. John Doe #12 was away at college and could not be reached, however, so the officers contacted his mother and told her why they wanted to speak with him. In a subsequent phone call, she stated that she had "confirmed" with John Does # 1, 4 and 8 that they had seen the video at Zimmerman's home one day in either September or October of 1998 although, as it turned out, she had confirmed no such thing.3 At no time did Sergeant O'Connor confirm the mother's information with any of the three boys and nothing in Detective DiSanti's reports indicate that he asked the boys about the video or that the boys mentioned it to him. Nonetheless, Sergeant O'Connor included the mother's statement in his affidavit in support of the search warrant.

Virtually the entirety of the lengthy affidavit recounted various incidents in which Zimmerman allegedly sexually

_____

3. We, of course, must confine ourselves to the facts that were before the issuing magistrate -- in other words, the affidavit. We note, however, that it was later discovered that the mother never spoke with John Does #4 and 8 about the video and there is no evidence that she spoke to her son, John Doe #1, about it. Rather, her statement was based on a conversation with a parent of either John Doe #4 or 8 and what she overheard the other boy's parents saying, presumably about what they had been told by their sons. Unlike United States v. Harvey, 2 F.3d 1318, 1324 (3d Cir. 1993), in which the defendant"offer[ed] nothing to question the reliability of the warrant's information," Zimmerman did so here. Had he not been given such short shrift by the District Court when he challenged the reliability of this triple hearsay, the government might well have been left with the one statement of John Doe #12 made at least ten months earlier.

4

accosted students at the high school or on athletic road trips, with only brief mention made of pornography. The affidavit refers to the video clip shown to John Doe #12; the mother's statement that it had been shown to John Does # 1, 4 and 8; and an opinion by Postal Inspector Thomas Clinton stating, among other things, that persons with a sexual interest in children may possess child pornography and keep it in their homes for extended periods of time. Inspector Clinton's statements did not refer to Zimmerman or the facts of this case, and there was no indication that he knew anything about either.

The warrant application sought authorization to search for evidence of violations of 18 Pa. Cons. Stat.SS 2701 (simple assault), 2709 (harassment and stalking), 6301 (corruption of minors) and 6312 (sexual abuse of children, which includes the possession of child pornography), and identified the following items to be searched for and seized:

> Computer and any computer related or attached equipment, including but not limited to hard drives, keyboard, mouse(s), printers, terminals, display screens, modems and connectors, cables, magnetic and optical media storage devices, any sexual materials including photos, printed materials or likenesses such as images of humans in sexual contact with animals or other prohibited sexual acts defined by Title 18 Sections 3101 and 6312.

App. at 57. The Hon. Lawrence O'Toole of the Court of Common Pleas of Allegheny County, Pennsylvania issued the warrant and the police, including Inspector Clinton, searched Zimmerman's home on March 19, 1999. The police seized, among other things, several images of child pornography. In July 1999, a federal grand jury empaneled in western Pennsylvania returned a one-count indictment charging Zimmerman with possession of child pornography in violation of 18 U.S.C. S 2252A(a)(5)(B).

II.

The Fourth Amendment to the United States Constitution provides:

5

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. One's home is sacrosanct, and unreasonable government intrusion into the home is"the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York , 445 U.S. 573, 585 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). The Fourth Amendment prohibits a general warrant. Boyd v. United States, 116 U.S. 616, 625 (1886); Andresen v. Maryland, 427 U.S. 463, 480 (1976). A magistrate must determine that there is a"fair probability that . . . evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (quoting United States v. Jones, 362 U.S. 257, 271 (1960)). The warrant must also describe the things to be seized with sufficient particularity and be "no broader than the probable cause on which it is based." United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1991).

We exercise plenary review of the District Court's denial of Zimmerman's motion to suppress. United States v. Loy, 191 F.3d 360, 365 (3d Cir. 1999). Thus, we apply the same standard the District Court was required to apply and determine whether the magistrate who issued the warrant had a "substantial basis" for determining that probable cause existed. United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993). In so doing, we must determine if a "practical, commonsense decision [was made] whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime [would] be found in a particular place." Gates, 462 U.S. at 238. The decision of the magistrate "should be paid great deference." Harvey , 2 F.3d at 1322. This, however, "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1984).

6

At the time the search warrant was issued, Zimmerman had been charged in state court with two crimes: corruption of minors and simple assault. The affidavit of Sergeant O'Connor is replete with probable cause that Zimmerman committed both crimes. But the police were not looking for evidence of "wrongdoing," which is the only probable cause the District Court found and the conduct on which the Dissent, mistakenly in our view, focuses. The police were looking for pornography. As the government argued at the suppression hearing, "It was a warrant for the adult pornography that the Defendant had shown to three minor children at his residence." App. at 289. And, as we will explain, it was also a warrant for child pornography, although the government attempts to recast history on that score.

A. Child Pornography

We need not tarry long before deciding that there was no probable cause to search Zimmerman's home for child pornography; indeed, the government concedes that there was not, and the affidavit contained no information that Zimmerman had ever purchased or possessed child pornography.

It is quite clear to us, though, that when the police applied for the warrant, they were seeking the magistrate's imprimatur to search for both adult and child pornography, and we reject the government's argument that the police were only seeking the former. For starters, the application for the warrant and the warrant itself specifically identified images of "sexual acts as defined by Title 18 Sections 3101 and 6312" of the Pennsylvania Criminal Statute as items to be searched for and seized. Section 3101, entitled "Definitions," defines "deviate sexual intercourse," "indecent contact" and "sexual intercourse." These definitions were certainly broad enough to cover any hardcore adult pornography, including bestiality. Yet the definitional section was expanded in the application and the warrant to include section 6312, entitled "Sexual Abuse of Children." Section 6312 prohibits, in its only relevant subsection, the possession of images of children engaged in sexual acts. 18 Pa. Cons. Stat. S 6312(d). In addition to drawing upon

7

section 6312 for purposes of definition, the application and the warrant itself clearly call for a search for items that are in violation of section 6312.

The affidavit of Sergeant O'Connor supports the conclusion that child pornography was targeted. In the affidavit, O'Connor refers to his discussion with Postal Inspector Clinton:

> Clinton stated that persons who have sexual interest or sexual contact with children may often collect images, pictures, photos or other visible depictions of children, or of children depicted in sexually explicit positions or involved in sexual acts. Very often these people will keep these items in close proximity to themselves where they can easily gain access to it. These items may be hidden in a place not readily observable. Very often these people will not dispose of these items and will only give these items up when they are taken from them. These people may keep these items for years.

App. at 63–64. There was no necessity for Clinton's statement had the police not been searching for child pornography.4 And finally, we note, Sergeant O'Connor requested assistance from a City of Pittsburgh police officer

_____

4. Because it is undisputed that there was no probable cause to search for child pornography, we need not determine what weight, if any, to accord Clinton's statement. We note, however, that there is nothing in that statement indicating that Clinton knew anything about Zimmerman or what the investigation had disclosed. It is well-established that an expert opinion must be tailored to the specific facts of the case to have any value. See, e.g., Weber, 923 F.2d at 1345. "Rambling boilerplate recitations designed to meet all law enforcement needs" do not produce probable cause. Id. In Loy, we stated that "experience and expertise, without more, is insufficient to establish probable cause." 191 F.3d at 366. In that case, the very same Postal Inspector Clinton provided a similar statement regarding the proclivities of persons who are sexually interested in children. We found that "Inspector Clinton's conclusory statement that people who collect child pornography commonly keep it in their homes is insufficient . . . to establish the sufficient nexus between the contraband and [the defendant's] residence." Id. at 366–67. Were we required to decide the issue, we would most likely find that Clinton's boilerplate statement "may have added fat to the affidavit, but certainly no muscle." Weber, 923 F.2d at 1346.

8

in executing the warrant. The "Offense/Incident Report" filled out by the officer states that "Sgt. Don O'Connor of the McCandless Police Department requested assistance in executing a search warrant at 3729 Parviss Street in an attempt to seize items of or related to child pornography." App. at 200 (emphasis added). Clearly, the officers intended to enter Zimmerman's home to retrieve child pornography, although there was absolutely no information in the affidavit or anywhere else indicating that child pornography was -- or ever had been -- located there.

B. Adult Pornography

The government argues that the police were only searching for adult pornography, that it had probable cause to do so, and that the child pornography that was found was thus discovered incident to a legal search. But there was no probable cause to search for adult pornography and no "substantial basis" for the magistrate to have found probable cause because the information supporting probable cause was stale. It is well settled that:

> Age of the information supporting a warrant application is a factor in determining probable cause. See United States v. Forsythe, 560 F.2d 1127, 1132 & n.6 (3d Cir. 1977); see also United States v. McNeese, 901 F.2d 585, 596 (7th Cir. 1990). If too old, the information is stale, and probable cause may no longer exist. McNeese, 901 F.2d at 596. Age alone, however, does not determine staleness . . . Rather, we must also examine the nature of the crime and the type of evidence. See United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983), cert. denied, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984); Forsythe, 560 F.2d at 1132; see also United States v. McCall, 740 F.2d 1331, 1135-36 (4th Cir. 1984).

Harvey, 2 F.3d at 1322.

The government concedes that when the warrant was issued, the officers were only aware of the one video clip "depicting a woman performing a sexual act with a horse." Appellee's Br. at 36. The affidavit noted the mother's statement that John Does # 1, 4 and 8 had been shown

9

that video clip some six months earlier and John Doe #12's statement that he had been shown the video clip when he was in high school -- in other words, at the very earliest, ten months before. This information, the issue of reliability aside, is the only information in the affidavit that Zimmerman ever had pornography of any type in his home.

In Harvey, we held that information indicating that the defendant had ordered and received child pornography on thirteen occasions during the fifteen months preceding the issuance of a warrant was not stale. We emphasized, however, that the defendant had received three mailings only two months before the warrant was issued. The information linking Zimmerman to adult pornography was much older and there was less of it. We also emphasized the fact that there was a "continuing offense of receiving child pornography." Harvey, 2 F.3d at 1322 (quoting United States v. Rakowski, 714 F.Supp. 1324, 1331 (D. Vt. 1987)). The affidavit here does not even allege much less demonstrate that Zimmerman was engaged in a "continuing offense" of acquiring pornography and keeping it in his home. The affidavit only avers that six and at least ten months earlier Zimmerman had one piece of adult pornography and there is no indication whatsoever that he continuously acquired or planned to acquire any other pornography.5 Indeed, there is nothing which indicates that even one piece of pornography was ever downloaded from the computer on which the boys allegedly viewed it.

In conducting our staleness analysis in Harvey , we also pointed to the fact that pedophiles rarely, if ever, dispose of child pornography. Many courts have similarly accorded weight to that fact. See, e.g., United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997); United States v. Peden, 891 F.2d 514, 518-19 (5th Cir. 1989). Presumably individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain.

_____

5. The government states that the "offenses described in the instant affidavit . . . are continuing offenses." Appellee's Br. at 27. The affidavit
does allege that Zimmerman engaged in a continuous pattern of sexual abuse and inappropriate conduct. This, however, has nothing to do with whether he continuously possessed and showed pornography to boys in his home.

Postal Inspector Clinton, too, opined that "persons who have a sexual interest or sexual contact with children . . . [v]ery often . . . will not dispose of [child pornography] . . . ." App. at 64. In its brief opinion, the District Court emphasized what Clinton had said. There is no indication, however, that Zimmerman ever possessed child pornography, and Clinton did not address the issue of whether adult pornography is typically retained. Moreover, the only piece of pornography that Zimmerman allegedly possessed was, in all likelihood, legal and quite easy to obtain. The affidavit states that the video clip of the woman and the horse was viewed via the Internet. This suggests that Zimmerman could easily access it and had no reason to retain a copy and carefully guard it.

The government relies on two Ninth Circuit child pornography cases to argue that the six month passage of time from when John Does #1, 4 and 8 supposedly viewed the video to the issuance of the warrant does not render the information stale.6 Parenthetically, and while, of course, there is no bright line that can be drawn, we note that in another Ninth Circuit case, the Court found that a four month passage of time between the activities described and the issuance of the warrant rendered the search unlawful. Durham v. United States, 403 F.2d 190, 195 (9th Cir. 1968).

Pointing first to United States v. Rabe, 848 F.2d 994 (9th Cir. 1988), the government asserts that the Court held that information "over two years old was not stale." Appellee's Br. at 25. This assertion is, quite simply, incorrect. In Rabe, the warrant, indeed, depended in part on packages of child pornography that had been seized two years before the warrant was issued. The government fails to mention, however, that the defendant in Rabe had corresponded with an undercover investigator about the pornography collection he kept in his home only two months  before the search warrant was issued.

The government next points to United States v. Lacy, 119 F.3d 742 (9th Cir. 1997). In Lacy, the Court held that ten-

_____

6. We find it curious that the government relies on cases dealing with child pornography when it claims to have been seeking only adult pornography.

month-old information was not stale. Lacy, however, is readily distinguishable from this case. First, of course, Lacy involved child pornography. Thus, the Court placed significant weight on expert opinion indicating that collectors of child pornography rarely if ever dispose of such material and store it for long periods in a secure place, typically in their homes. Id. at 746 (citing Rabe, 848 F.2d at 995-96) (internal quotations omitted). As discussed, nothing indicates that this logic applies in the adult pornography context. There was also evidence in Lacy that the defendant had called an Internet pornography provider sixteen times and downloaded six picture files. The Court emphasized the fact that the defendant had actually "downloaded" images of child pornography. Downloading the images to a hard drive or diskette established that the pornography was physically present in the defendant's home, thereby justifying a search of his home. Here, there is no evidence that Zimmerman made more than one or two calls, much less repeated calls, to request pornography. More importantly, the affidavit did not even suggest that Zimmerman ever downloaded the video clip of the woman and the horse, and the Dissent does not argue that he did. Thus, the video clip -- the only pornography of which the investigating officers were aware -- may well have been located in cyberspace, not in Zimmerman's home.

In sum, the circumstances of this case clearly demonstrate that the affidavit was bereft of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210 (1932).

C. Good Faith Exception

The government argues, however, that even if the warrant was defective, the seized items of child pornography should not be suppressed because the good faith exception to the exclusionary rule applies. United States v. Leon , 468 U.S. 897, 922 (1984). "The good faith exception instructs that suppression of evidence `is inappropriate when an officer executes a search in objectively reasonable reliance on a ewarrant's authority,' " even though no probable cause to search exists. United States v. Hodge, 246 F.3d 301, 307

12

(3d Cir. 2001) (quoting United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993)). Because law enforcement officers are not attorneys and, in Leon's phrase, must often make "hurried judgment[s]," courts should not suppress probative evidence when a reasonable mistake has been made in obtaining a warrant. "The test for whether the good faith exception applies is `whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " Loy, 191 F.3d at 367 (quoting Leon, 468 U.S. at 922 n. 23).

Before determining whether the good faith exception applies, we should briefly reflect upon the purpose of the exclusionary rule. The exclusionary rule is designed to deter police conduct that violates the constitutional rights of citizens. Leon, 468 U.S. at 919. "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." United States v. Peltier, 422 U.S. 531, 539 (1975) (quoting Michigan v. Tucker, 417 U.S. 433, 447 (1974)). By excluding evidence seized as a result of an unconstitutional search and seizure, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." Id. Because the "purpose of the exclusionary rule is to deter unlawful police conduct," the fruits of an unconstitutional search should be suppressed if, despite the magistrate's authorization, an objectively reasonable, well-trained officer would have known that the search violated the Fourth Amendment. Leon, 468 U.S. at 919 (quoting Peltier, 422 U.S. at 542). Concomitantly, suppression should not be ordered where an officer, acting in objective good faith, has obtained a warrant without probable cause because in such cases only marginal deterrent purposes will be served which "cannot justify the substantial costs of exclusion." Leon, 468 U.S. at 922.

The Supreme Court has held that " `a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has `acted in good faith in conducting the search.' " Leon, 468 U.S. at 922 (quoting United States v. Ross, 456 U.S. 798, 823 n. 32 (1982)). There are

13

situations, however, where "an officer's reliance on a warrant would not be reasonable and would not trigger the [good faith] exception." Hodge, 246 F.3d at 308. We have identified four such situations:

> 1. Where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2. Where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3. Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> 4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Hodge, 246 F.3d at 308; see also Leon , 468 U.S. at 923. Zimmerman contends that all but the second situation apply here. If, of course, just one is present, application of the good faith exception will not be triggered. We, therefore, will address but one.

The affidavit of Sergeant O'Connor so lacked the requisite indicia of probable cause that it was "entirely unreasonable" for an official to believe to the contrary. O'Connor applied for a warrant authorizing the seizure of images of both adult and child pornography, was the author of the supporting affidavit, and was one of the executing officers. In that affidavit, O'Connor recited information indicating that a single video clip of a woman engaged in oral sex with a horse was located on a computer in Zimmerman's home no earlier than six months before the search. As discussed above, this information was stale. Moreover, there was nothing that transpired over that six month period to even suggest that a "hurried judgment" had to be made to seek the warrant, excusing any reasonable mistake; indeed, the police had complete control over the timing.7 And, of course, while the warrant also

_____

7. At the time he applied for the warrant, Sergeant O'Connor had no real reason to question the reliability of the mother's statement given to him

14

specifically authorized a search for child pornography, nothing in the affidavit indicated that such pornography was ever in Zimmerman's home.

Any reasonably well-trained officer in the "stationhouse shop would recognize as clearly insufficient" the affidavit that was presented to the magistrate. United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993). When a police officer has "not presented a colorable showing [of probable cause], and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of Leon does not apply." United States v. Hove, 848 F.2d 137, 140 (9th Cir. 1988).

It bears mention that Sergeant O'Connor crafted the affidavit to portray Zimmerman in the worst possible light. In that single-spaced, seven-page affidavit, O'Connor described in great detail the sexual misdeeds that Zimmerman allegedly committed against his students but which had nothing to do with whether there was pornography in his home. It is not until the next to the last line of the fifth page of the affidavit, however, that O'Connor even mentioned pornography, much less anything that might provide probable cause to search for pornography in Zimmerman's home, and that mention -- the John Doe #12 reference -- was fleeting. Any "reasonably well-trained officer" would have known that there was marginal evidence at best of adult pornography, evidence which was anything but current, and no evidence whatsoever to support a search for child pornography. Perhaps this is why the affidavit is loaded with lurid -- and irrelevant-- accusations.

When the Supreme Court announced the good faith exception in Leon, it weakened the exclusionary rule, but it did not eviscerate it. "Good faith is not a magic lamp for police officers to rub whenever they find themselves in

_____

that same day. Because he was not operating under any time pressure, however, some minimal further investigation -- contacting even one of the boys, for example -- would most likely have caused him to question her reliability before the application was made if, indeed, it would have been made at all given the precious little evidence that would have remained.

15

trouble." United States v. Reilly, 76 F.3d 1271, 1280 (2nd Cir. 1996). And particularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable. That aside, "[T]he good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all known facts." Id. at 1273. The objective standard "requires officers to have a reasonable knowledge of what the law prohibits." Leon, 468 U.S. at 919-20 n.20. No objectively reasonable police officer could believe that, despite the magistrate's authorization, the law did not prohibit a search of Zimmerman's home for pornography, child and adult. It follows that the good faith exception does not apply and the fruits of the search must be suppressed.8

III.

The order denying the motion to suppress will be reversed and the judgment of conviction and sentence imposed thereon will be vacated and the case remanded for such proceedings as are consistent with this opinion.

_____

8. The government argues that even if the warrant was defective, the good faith exception should apply because Postal Inspector Clinton was not involved in the investigation leading up to the issuance of the warrant and, therefore, "would have had no reason to know of the defect" in the warrant. Appellee's Br. at 23. The Supreme Court has made clear, however, that investigating officers cannot "rely on colleagues who are ignorant of the circumstances under which the warrant was obtained" to insulate the search from constitutional scrutiny. Leon, 468 U.S. at 923 n.24 (citing Whiteley v. Warden, 401 U.S. 560, 568 (1971)).

16

ALITO, Circuit Judge, dissenting:

I must respectfully dissent. Even if the search warrant's authorization to seize the critical evidentiary items was not supported by fresh probable cause, suppression of the evidence obtained in the search is not proper due to the "good faith" exception to the exclusionary rule recognized by the Supreme Court in United States v. Leon , 468 U.S. 897 (1984).

The defendant, a high school coach, pled guilty in federal court to the offense of possession of child pornography, in violation of 18 U.S.C. S 2252A(a)(5)(B), but his plea was conditioned on his right to appeal the denial of his motion to suppress evidence taken in a search of his home pursuant to a warrant issued by the Allegheny County Court of Common Pleas. Critical evidence obtained in that search included "computer-generated images depicting minor boys engaged in sexually explicit acts, several catalogs offering for sale video tapes and other materials depicting teenaged boys and young adults engaged in sexual activity, and several hundred images of child erotica." App. 244.

When the search warrant was issued, the only charges pending against the defendant were state charges for corruption of minors, in violation of 18 Pa. Cons. Stat. Ann. S 6301 (A) (1), and simple assault, in violation of 18 Pa. Cons. Stat. Ann. S 2701 (A) (1). An affidavit of Sergeant Donald O'Connor of the McCandless Township Police Department was submitted in support of the search warrant application, and it set out ample evidence supporting these charges. According to the information in the affidavit, the defendant, among other things, had engaged in the unwelcome touching of minor male students; had rubbed his clothed genitals against them; had forced a student to engage in simulated oral sex and had told this student that the student would perform oral sex on the entire basketball team; had pressured a minor student to perform masturbation in the defendant's presence; had coerced a student to submit to being struck on the buttocks with a two-by-four piece of wood and had then tried forcibly to lower the student's pants; had whipped a student with belts and punched another

17

student; and had continually engaged in verbal sexual harassment of minor students, for example, repeatedly calling one student the "team slut." Some of these incidents had allegedly taken place at the defendant's home. In addition, Sergeant O'Connor's affidavit recited evidence that on several occasions the defendant had shown sexually explicit materials to the minor students. On one occasion during a basketball trip, the defendant had allegedly forced several minors to watch a pornographic movie with him in a hotel room and had complained that the movie did not contain enough graphic sex. On another occasion, according to the affidavit, the defendant had repeatedly shown four minors a video clip of a woman performing oral sex on a horse. The defendant had allegedly displayed this video clip to the minors in his home on his computer screen.

The warrant authorized a search for evidence of the offenses with which the defendant was charged and related crimes involving the victimization of minors. The warrant listed as items to be seized computer equipment and "sexual materials." It is apparent that the warrant authorized a search for this latter, broad category of materials, not because their possession was necessarily illegal (i.e., not because they were legally obscene or constituted child pornography), but because the defendant had allegedly used such materials as part of the course of conduct of sexual abuse recounted in the affidavit.

In order to obtain reversal of his conviction, the defendant must show that the critical items of evidence previously noted should have been suppressed. He cannot make such a showing if the critical items were within the scope of the warrant and there was probable cause to search for them in his home. See United States v. Le, 173 F.3d 1258 (10th Cir. 1999) (if officers seize items not within the scope of the warrant, only those items should be suppressed); United States v. Christine, 687 F.2d 749, 754 (3d Cir. 1982) (if probable cause is lacking for certain items covered by a warrant, the warrant may generally be redacted to remove invalid portions). Nor can he make such a showing if these items were in plain view of the executing officers when they conducted valid aspects of the search. See, e.g., Horton v. California, 496 U.S. 128, 134-37 (1990).

18

Beginning with what I view as the easiest point, I believe that the evidence in the affidavit was clearly sufficient to provide probable cause to believe that, in March 1999, when the warrant was issued, the defendant's home computer still contained the video clip or traces of the clip of the woman and the horse, and that this video clip, whether or not it met the constitutional test for obscenity, was evidence of corruption of minors. Furthermore, it is not important whether the minors had last viewed this clip as recently as five months before the search or as much as 12 months before the search. Since the clip had been shown repeatedly on the computer, it is probable -- not certain, but probable -- that it had been downloaded to the computer's hard drive. In that event, it was probable -- again, not certain, but probable -- that either the clip or traces of it remained, even if the defendant had attempted to delete it. See Adobe Systems, Inc. v. South Sun Products, 187 F.R.D. 636, 642-43 (S.D. Cal. 1999) (deleting a file on most computers does not actually result in deletion) (citing authorities). Whether a search of the computer's hard drive for this clip would have necessarily resulted in the discovery of any of the computer-related items of evidence that the government intended to introduce at the defendant's trial is not disclosed by the record, as far as I am aware.

It is also not entirely clear whether there was fresh probable cause to believe that the defendant's computer contained other similar items or that his home contained similar materials in other media. However, the defendant's allegedly extended course of conduct, with the students and his use of sexual materials in carrying out that course of conduct both away from and in his home, provide support for the proposition that as of the date of the search he possessed similar materials in his home. In addition, Sergeant O'Connor's affidavit stated that he had been informed by a postal inspector with lengthy experience investigating crimes involving the sexual victimization of minors that persons with a sexual interest in children often collect and keep sexually related images of minors for lengthy periods and often use pornography depicting adults to assist in victimizing minors. See App. 64. The previously noted incidents alleged in the affidavit showed that the

19

defendant had a sexual interest in minors and that he had used sexual materials on several occasions as part of his course of conduct. All of this information tends to support a finding of probable cause.

We need not decide, however, whether we would find that Sergeant O'Connor's affidavit provided fresh probable cause for the items that the government intended to introduce at the defendant's federal trial because the search in this case was supported by a warrant issued by a detached and neutral magistrate. Under Leon, we may not suppress evidence seized pursuant to that warrant for lack of fresh probable cause unless the supporting affidavit was" `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). This exception to the "good faith" exception applies in only those rare circumstances in which, although a neutral magistrate has found that there is probable cause, a lay officer executing the warrant could not reasonably believe that the magistrate was correct.

This exception to the "good faith" exception is inapplicable here. The majority finds that the probable cause set out in the affidavit was stale, but there is no bright line between fresh and stale probable cause. See, e.g., United States v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996). The line varies depending on the nature of the case and the circumstances, and the passage of time is less significant " `when an activity is of a protracted and continuous nature.' " United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997) (citation omitted). Here, a judge of the Allegheny County Court of Common Pleas found that there was probable cause. So did a United States District Court Judge. I cannot agree with the majority that this conclusion was so obviously wrong that a lay officer could not reasonably have thought that probable cause was present. In my view, the majority's holding is not consistent with Leon, and I must therefore dissent.

20

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit