NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1102

UNITED STATES OF AMERICA

v.

GEORGE PAYNE,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(Crim. No. 07-cr-00226)
District Judge: Hon. William J. Martini

Submitted pursuant to Third Circuit LAR 34.1(a)
February 1, 2010

Before: McKEE, *Chief Circuit Judge*, HARDIMAN, *Circuit Judges*,
and POLLAK, *District Judge**

(Opinion filed:  September 20, 2010)

OPINION

McKEE, *Chief Circuit Judge*.

George Payne argues that the district court erred in denying his suppression motion

and also in not dismissing the indictment charging him with violating provisions of the

Child Pornography Prevention Act of 1996 ("CPPA"), 18 U.S.C. §§ 2251 *et seq*.  In

---

*Hon. Louis H. Pollak, Senior District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

Count One, he was charged with knowingly receiving child pornography, as defined by 18 U.S.C. § 2256(8)(A), in violation of 18 U.S.C. § 2252A(a)(2)(A).  In Count Two, he was charged with knowingly possessing child pornography, as defined by 18 U.S.C. § 2256(8)(A), in violation of 18 U.S.C. § 2252A(a)(5)(B).

Before trial Payne moved to suppress physical evidence seized from his residence, and he also moved to dismiss the indictment based on the alleged unconstitutionality of the CPPA.  Both motions were denied and Payne was convicted following a bench trial on stipulated facts.  On October 25, 2007, the district court filed an opinion explaining its findings and legal conclusions.  *See United States v. Payne*, 519 F. Supp.2d 466 (D.N.J. 2007).

Payne was subsequently sentenced to sixty months of concurrent imprisonment on each count, followed by ten years of supervised release.   For the reasons that follow, we will affirm.

## I.  Motion To Suppress.

Because we write primarily for the parties, we set forth only those facts necessary to our analysis.  In addition, the district court's analysis of the search warrant application is recited in the district court's opinion and need not be repeated here.  *See* 519 F. Supp.2d at 468-472.

Our review of the district court's denial of a motion to suppress is plenary.  *United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010) (citation omitted).  "Thus, we apply

2

the same standard the District Court was required to apply," i.e., "whether the magistrate who issued the warrant had a substantial basis for determining that probable cause existed." *Id*. (citation and internal quotation marks omitted). "We owe great deference to the magistrate's probable cause determination, but we will not simply rubber stamp it." *Id*. (citations and internal quotation marks omitted).

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Court explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.

*Id*. at 238-39 (citation, internal quotation marks and bracket omitted).

Payne rests his challenge to the denial of his suppression motion in part on *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002). There, the police obtained a warrant to search Zimmerman's home for adult and child pornography, and found, *inter alia*, several images of the latter. *Id*. at 429. However, the warrant application contained no information suggesting that Zimmerman possessed child pornography in his home. *Id*. We concluded that there was no probable cause to search for child pornography, because there was nothing to suggest that child pornography was ever in the home. Indeed, the government conceded as much. *Id*. at 432.

*Zimmerman* is not as helpful as Payne believes because the warrant application here linked a computer in Payne's home to a child pornography website that provided

3

access to thousands of illegal images of child pornography. The affidavit also stated that Payne paid $79.99 for a subscription to the child pornography website and that he never challenged that charge on his credit card, nor did he attempt to cancel his paid subscription. That is clearly sufficient to establish a reasonable basis to believe that Payne used his home computer to download images of child pornography and that evidence of child pornography possession and receipt would be found there. *See, e.g., United States v. Gourde*, 440 F.3d 1065, 1070-71 (9th Cir. 2006) (*en banc*).

Payne also contends that the affidavit was stale. The "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). "If too old, the information is stale, and probable cause may no longer exist." *Zimmerman*, 277 F.3d at 434. "Age alone, however, does not determine staleness." *Harvey*, 2 F.3d at 1322. In analyzing a staleness claim, "we must do more than simply count the number of days between the date of the alleged criminal activity and the date of the warrant. We must also consider the nature of the crime and the type of evidence." *Vosburgh*, 602 F.3d at 528. (Internal quotation marks omitted).

Payne contends that the eight month delay between the initiation of the investigation and service of the search warrant renders the information in the warrant affidavit stale. We disagree.

The government did not wait eight months to apply for the warrant to search

4

Payne's computer. Although the government's investigation of the illegal child pornography website began in October 2005, Payne did not subscribe to that site until February 12, 2006. And, the agent applied for the search warrant on May 3, 2006, less than three months after Payne's subscription began and only two months after the initial twenty-day subscription ended. Given the nature of the material, it was reasonable to believe that the two-month "delay" did not make the affidavit stale.

As we have explained, child pornography "is illegal and difficult to obtain," and it is, therefore, to be presumed that "individuals will protect and retain child pornography for long periods of time." *Zimmerman*, 277 F.3d at 434; *see also United States v. Shields*, 458 F.3d 269, 279 n.7 (3d Cir. 2006) ("We have noted that collectors of child pornography often store their material and rarely discard it.") (citation omitted). In *Shields*, we rejected a claim that a nine month lapse between shutting down "e-groups" trading in child pornography and filing an application for a search warrant did not render the information stale. *Shields*, 458 F.3d at 279 n.7.

Moreover, as the district court noted, "the nature of digital evidence also weighs against a finding of staleness." 519 F. Supp.2d at 477. The affidavit explained why images are easy to store and difficult to permanently delete. Thus, once images are "burned" to a hard drive, forensic experts can often recover them later even though someone subsequently tries to hide, encrypt or erase them. App. 35-38. Thus, the affidavit clearly supported an inference that Payne's computer would retain at least a

5

digital footprint of illegal activity months after the initial subscription to the child pornography website ended. Thus, the district court did not err in rejecting Payne's argument that the evidence should have been suppressed because the information relied upon to obtain the warrant was stale.

Moreover, we agree with the district court's conclusion that, even if the warrant was invalid because of staleness, the executing officers were entitled to rely on the good faith exception to the exclusionary rule. *See United States v. Leon*, 486 U.S. 897 (1984). "The fact that an officer executes a search pursuant to a warrant suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars And Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 146 (3d Cir. 2002) (citation and internal quotation marks omitted). Although there are "four narrow exceptions" to this rule, none of them apply here, and Payne's argument is not to the contrary. *Id*.

Rather, Payne contends that our decision in *United States v. Zimmerman*, *supra*, "also limited the applicability of the [good faith] [e]xception where, as here, the Affiant . . . is also one of the executing officers." Payne' Br. at 20. He bases his contention on the following statement in *Zimmerman*:

> And particularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable.

6

277 F.3d at 438.

However, *Zimmerman* merely reinforced the longstanding exception to the good faith rule that "paltry" affidavits which "'on their face preclude reasonable reliance'" cannot trigger application of the good faith exception . . .." *Zimmerman*, 277 F.3d at 437-438 (quoting *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988)). It did not create another exception to the rule enunciated in *Leon.* There is nothing on this record to suggest that the agent who obtained the search warrant was acting in anything other than good faith in preparing the supporting affidavit and obtaining the challenged warrant. Thus, the district court properly denied Payne's suppression motion.

## II. Motion to Dismiss the Superseding Indictment.

The superseding indictment specifically charged that Payne received and possessed child pornography as defined by 18 U.S.C. § 2256(8)(A). Section 2256(8)(A) defines "child pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – *the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.*" (emphasis added). Payne argues that the Supreme Court's holding in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), invalidated the entire CPPA, including the provisions he was charged with violating. Our review of Payne's constitutional attack on the CPPA is plenary. *United States v. Rodia*, 194 F.3d 465, 469

7

(3d Cir. 1999).

In *Free Speech Coalition*, the Supreme Court struck down, as overbroad and unconstitutional, two subsections of the CPPA that were part of the statutory definition of "child pornography." 535 U.S. at 256, 258. Those provisions were 18 U.S.C. § 2256(8)(B), which prohibited any visual depiction, including a computer-generated image, that "is, or appears to be, of a minor engaging in sexually explicit conduct," and § 2256(8)(D) which prohibited any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" it depicted "a minor engaged in sexually explicit conduct." *Id*. *Free Speech Coalition* held that the "virtual pornography" prohibited by these provisions is speech that is protected under the First Amendment. *Id*.

In 2003, Congress repealed 18 U.S.C. § 2256(8)(D) and amended the definition of child pornography in 18 U.S.C. § 2256(8)(B) to include a "visual depiction" that "is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct." *See* Prosecutorial Remedies and Other Tools Against the Exploitation of Children Today Act, Pub.L. No. 108-21, § 502(a)(1), (a)(3), 117 Stat. 650, 678 (2003).

Payne claims that the 2003 amendment to § 2256(8)(B) does not materially differ from the definition found unconstitutional in *Free Speech Coalition*. However, Payne's case has nothing to do with "virtual pornography" protected under the First Amendment.

8

He was charged with possession and receipt of *actual* pornography as defined in §

2256(8)(A). Moreover, § 2256(8)(A) was taken from an earlier definition of child

pornography that involved the use of "actual minors" which was deemed constitutional in

*New York v. Ferber*, 458 U.S. 747 (1982). *Free Speech Coalition*, 535 U.S. at 241.

Payne next argues that § 2256(8)(A) runs afoul of *Free Speech Coalition* because

it defines "child pornography" to include a "computer or computer-generated image or

picture, whether made or produced by electronic, mechanical, or other means of sexually

explicit conduct" but does not contain a definition of "computer-generated" or the

production methods of electronic, mechanical or other means."  The argument borders on

frivolity.

The mere fact that an image is computer-generated or produced by electronic

means does not make it the "virtual pornography" at issue in *Free Speech Coalition*.  As

the district court explained: "If an image's 'production . . . involves the use of a minor

engaging in sexually explicit conduct,' as § 2256(A)(8) specifically requires, then the

resulting image is actual – not virtual – child pornography."  519 F. Supp.2d at 480 (citing

*Free Speech Coalition*, 535 U.S. at 250-51).  Payne's argument would transform actual

images captured on a digital camera or manipulated with software into "virtual" images.

We see nothing in the text of this statute to suggest that Congress intended such an

illogical and impractical result.  Payne's case clearly involves neither of the provisions

struck down in *Free Speech Coalition* nor the provisions passed by Congress in reaction

9

to *Free Speech Coalition*.

### III. Conclusion.

Because the district court did not err in denying Payne's motion to suppress and his motion to dismiss the superseding indictment, we will affirm the district court's judgment of conviction and sentence.