**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1665
_____

UNITED STATES OF AMERICA

v.

ARTHUR THORNTON,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-11-cr-00130-001)
District Judge:  Hon. Joel H. Slomsky
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 13, 2014

Before:  CHAGARES, SHWARTZ, and GARTH, Circuit Judges

(Filed:  February 25, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Arthur Thornton appeals the District Court's denial of his motion to suppress

evidence obtained from a search of a house where he was staying.  For the reasons that

follow, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly

summarize the facts relevant to our decision. On November 3, 2010, a confidential

informant ("CI") met Thornton on a street corner in Philadelphia for the purpose of

buying drugs. The Philadelphia Police had supplied the CI with one hundred and thirty

dollars in recorded buy money to make the transactions. Police Officers Brian Myers and

Richard Woertz observed the CI meet with Thornton and exchange the money for four

tablets of a substance that turned out to be oxycodone. Thornton performed his end of

the transaction while sitting in his vehicle, a tan Hummer.

After the transaction, Officer Jamie Brown followed Thornton as he left the

location in his Hummer. Officer Brown observed Thornton perform what looked like

another drug transaction with an unknown man. After that transaction, Thornton drove to

a house located at 855 Brill Street in Philadelphia, parked, and entered the house.

On November 16, 2010, Officer Woertz observed Thornton leave the residence at

855 Brill Street. The police then had the CI call Thornton and arrange another drug

transaction. Thornton drove to meet the CI, who again purchased oxycodone from

Thornton while Thornton remained in his Hummer.

Officer Myers executed an affidavit and obtained search warrants for Thornton's

Hummer and for the house at 855 Brill Street on November 18, 2010. In his affidavit,

Officer Myers recounted the above facts, and noted that based on his narcotics

experience, Thornton was likely storing or selling narcotics out of the house, even though

2

the police had only seen him transact from his Hummer. The search warrant also sought items used in the manufacturing and distribution of drugs, including cash. In the course of the police executing the search warrant at 6:30 a.m. the following day, they found a loaded hand gun with an obliterated serial number, ammunition, cocaine, oxycodone, alprazolam, a scale, a box of sandwich bags, and almost two thousand dollars in cash. Based in large part on this search and seizure, a grand jury indicted Thornton with numerous drug and weapon offenses.

Thornton moved to suppress the physical evidence obtained in the search of the house.[1] He argued that the search was not supported by probable cause because there were no facts in the sworn affidavit that the police or the CI had ever seen him selling drugs out of his house. He also argued that the warrant was stale because two days elapsed between the most recent drug transaction and the time the police obtained the warrant.

After an evidentiary hearing at which Officers Myers and Brown testified, the District Court denied Thornton's motion. It found that the evidence that Thornton returned to 855 Brill Street immediately after the November 3, 2010 transaction, and left that same house immediately before the November 16, 2010 transaction, provided a sufficient basis to support the notion that Thornton possessed drugs in his residence. The District Court also rejected Thornton's argument that the warrant was stale. Thornton then pled guilty to eight counts of various drug and weapon offenses but preserved his

---

[1] Thornton does not challenge any aspect of the search of his vehicle, likely because no evidence of drug dealing was found therein.

right to appeal the denial of his motion to suppress. He was sentenced to a total term of 216 months of imprisonment. Thornton timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. In the suppression context, we "review the factual findings of the District Court for clear error, and exercise plenary review over the application of law to those facts." United States v. Pierce, 622 F.3d 209, 210 (3d Cir. 2010).

## III.

Thornton advances three arguments on appeal. He continues to contend that the search warrant was not supported by probable cause and that it was based on stale facts. He also argues (for the first time) that the affidavit used to obtain the search warrant was supported by a material misstatement of fact. All three contentions fail.

## A.

A finding of probable cause is based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). "To find probable cause to search, there needs to be a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (quotation marks and citation omitted). A court may draw "reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quotation marks omitted).

4

"Direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quotation marks omitted). We have long recognized that evidence associated with drug dealing "needs to be stored somewhere," and a drug dealer's dwelling is often "the best, and probably the only, location to store [such] items . . . ." Whitner, 219 F.3d at 298. We have held that there is a sufficient basis to infer that evidence of drug dealing might be found in a residence when the affidavit is based on evidence that (1) "the person suspected of drug dealing is actually a drug dealer;" (2) "the place to be searched is possessed by, or the domicile of, the dealer;" and (3) "the home contains contraband linking it to the dealer's activities." United States v. Stearn, 597 F.3d 540, 559 (3d Cir. 2010).

There was sufficient evidence to link the residence at 855 Brill Street to Thornton's drug activities here. Police officers observed Thornton engage in several drug transactions, supporting the notion that he was, in fact, a drug dealer. He was seen entering and exiting this dwelling immediately before and after selling drugs on two separate occasions. These facts, combined with Officer Myers's opinion that evidence of drugs was likely to be found in the residence, provide a substantial basis from which the issuing magistrate could conclude that evidence of drug dealing was likely to be found at 855 Brill Street.

## B.

Thornton next argues that the evidence in Myers's affidavit was too stale to support a finding of probable cause. "Age of the information supporting a warrant

application is a factor in determining probable cause." United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002). In determining whether the information is too stale, we must examine "the nature of the crime and the type of evidence." United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993).

Here, the police witnessed Thornton going to and from his dwelling before and after selling drugs on two separate occasions, about two weeks apart. From these observations, it was reasonable to infer that he may have been hiding drugs and items related to their manufacture or distribution in his residence on an ongoing basis. In these circumstances, a delay of two days between the last drug transaction and obtaining a search warrant does not make the information upon which the warrant relied stale. See United States v. Stiver, 9 F.3d 298, 301 (3d Cir. 1993) (three-day old information concerning the presence of drugs at a residence considered "very fresh" in the context of an ongoing pattern of drug dealing).

## C.

Thornton finally argues that the warrant should be invalidated because the affidavit contained a materially misleading statement. He argues that the way the affidavit reads might have led the Magistrate Judge to believe that the police had actually observed him dealing drugs from the dwelling, when they had not. Thornton did not make this argument to the District Court. A suppression argument not raised to the district court is waived absent good cause. United States v. Rose, 538 F.3d 175, 177 (3d Cir. 2008); accord United States v. Joseph, 730 F.3d 336 (3d Cir. 2013). We hold that Thornton has waived this argument.

6

Even if this argument were properly before the Court, it would fail, because the affidavit contained no misleading statement. It is quite clear from the affidavit that the police never claimed to have actually observed Thornton dealing drugs from 855 Brill Street. Officer Myers only asserts that based on the pattern of Thornton exiting and returning to the dwelling before and after drug transactions, and based on his experience with narcotics, that he "believe[d]" that drugs might be found in the house. Appendix 22. This is a conclusion of the affiant drawn from the facts set out therein, with which the issuing Magistrate Judge was free to disagree. It is not a misstatement that might invalidate this warrant.

IV.

For the foregoing reasons, we will affirm the order of the District Court denying Thornton's motion to suppress.