**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2703
_____


UNITED STATES OF AMERICA

v.

NYREE LETTERLOUGH,
                                    Appellant


_____

No. 22-3119
_____


UNITED STATES OF AMERICA

v.

SAQUEENA WILLIAMS, a/k/a Queenie,
                                    Appellant


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Nos. 1:19-cr-00043-001 & 1-19-cr-00043-002)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 19, 2023

Before:  RESTREPO, McKEE, and RENDELL, *Circuit Judges*

(Opinion filed: October 18, 2023)

_____

OPINION[*]

_____

McKEE, *Circuit Judge*.

Appellants Nyree Letterlough and Saqueena Williams appeal their judgment and conviction orders. They were jointly tried and convicted of drug trafficking and firearms offenses. Prior to trial, the District Court denied Letterlough's motion to sever her trial from co-defendant Williams's trial and denied Williams's motion to suppress evidence seized during the search of two residences. Letterlough now challenges the denial of the motion to sever, and Williams challenges the denial of the motion to suppress. For the reasons set forth below, we will affirm.[1]

## I. MOTION TO SEVER

Letterlough contends that the District Court abused its discretion by denying her motion to sever because a joint trial prevented Letterlough from calling co-defendant Williams to testify on her behalf. We review the denial of a severance motion for abuse of discretion.[2] A district court should grant a severance motion "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We have jurisdiction under 28 U.S.C. § 1291.

[2] *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991).

prevent the jury from making a reliable judgment about guilt or innocence."[3] Where a defendant moves for severance on the basis that a joint trial would prevent her from calling her co-defendant to testify, a district court considers the following factors enumerated in *United States v. Boscia*: "(1) the likelihood of [a] co-defendant[] testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendant[] could be impeached; (4) judicial economy."[4]

Here, the District Court did not abuse its discretion in reaching the conclusion that the *Boscia* factors did not warrant severance. In considering the likelihood that a co-defendant will testify, "[b]are assertions that co-defendants will testify are insufficient."[5] The District Court properly concluded that the first factor weighed against severance because Letterlough asserted without any evidence that Williams would testify on her behalf.[6] Additionally, the District Court did not abuse its discretion in concluding that the second factor weighed in favor of severance because Williams's purported testimony would be exculpatory.[7] It also did not abuse its discretion in concluding that the third factor weighed against severance because Williams's testimony would likely be

---

[3] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

[4] 573 F.2d 827, 832 (3d Cir. 1978).

[5] *Id.*

[6] Although Letterlough argues that this factor should be neutral because "Ms. Williams never denied she would testify at Ms. Letterlough's trial," Letterlough Br. 22–23, the burden was on Letterlough to provide evidence that Williams would testify on her behalf.

[7] While Letterlough contends that the District Court should have found that Williams's testimony "weighed significantly in favor of severance" because "the government had no evidence to refute it," Letterlough Br. 24–25, the government presented other evidence at trial that could have refuted Williams's testimony.

impeached.[8] Lastly, Letterlough and Williams were alleged to have participated in a single conspiracy and were charged in the same nine counts out of an eleven count indictment.[9] Thus, the District Court properly concluded that the fourth factor—judicial economy—weighed against severance because "[t]he public interest in judicial economy favors joint trials where the same evidence would be presented at separate trials of defendants charged with a single conspiracy."[10] We will affirm the District Court's denial of Letterlough's motion to sever because the District Court did not abuse its discretion in concluding that the *Boscia* factors cumulatively weighed against severance.

## II.    MOTION TO SUPPRESS

Williams argues that the District Court erred by denying her motion to suppress the evidence seized at her two residences (Rudy Road and Bradley Drive) because the warrants to search these residences lacked probable cause. We exercise plenary review of a district court's assessment of a magistrate's probable cause determination.[11] "By contrast, we conduct only a deferential review of the initial probable cause determination

---

[8] Letterlough argues that this factor "should not have weighed significantly against severance" because of the "potential testimony's highly probative value." Letterlough Br. 25, but this factor does not look at the probative value of the testimony, it looks at the likelihood the testifying co-defendant would be impeached.

[9] Letterlough and Williams were charged with conspiracy to distribute controlled substances, 21 U.S.C. § 846 (Count 1); two counts of possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a) (Counts 4, 7); three counts of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (Counts 5, 8, 11); two counts of possession of a stolen firearm, 18 U.S.C. § 922(j) (Counts 6, 9); and possession of a firearm with an obliterated serial number, 18 U.S.C. § 922(k) (Count 10). Williams was also charged with two counts of distribution of a controlled substance, 21 U.S.C. § 841(a) (Counts 2, 3).

[10] *Eufrasio*, 935 F.2d at 568.

[11] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).

made by the magistrate."[12] "If a substantial basis exists to support the magistrate's probable cause finding, we must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'"[13]

Williams argues that the warrants lacked probable cause because the affidavit contained stale information and failed to demonstrate a nexus between her drug trafficking and the residences.[14] The District Court did not err when it rejected these arguments and upheld the magistrate's probable cause determination.

On February 1, 2018, after an eighteen-month investigation into Williams's drug trafficking, State Trooper Shawn Panchik applied for warrants based on his affidavit of probable cause. In the affidavit, Panchik provided historical information learned from confidential sources in 2012 before the investigation into Williams's drug distribution began in 2016. Panchik also included a voluminous amount of information gathered during the eighteen-month investigation, including surveillance of Williams and her two residences, geolocation monitoring of Williams's cell phone, discussions with confidential informants, and three controlled drug buys—the last of which resulted in Williams's arrest.

Williams contends that the information in the affidavit was stale and insufficient to establish probable cause. Our staleness analysis focuses on "[t]he likelihood that the evidence sought is still in place[, which] depends on a number of variables, such as the

---

[12] *Id.*

[13] *Id.* (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)).

[14] The warrants for both searches were based on the same affidavit of probable cause.

nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched."[15] "The passage of time 'loses significance' when the evidence sought relates to protracted or ongoing criminality,"[16] which "is inherent in a large-scale narcotics operation."[17] While the affidavit contained historical information, it catalogued an ongoing and continuous large-scale drug trafficking operation. Thus, the information in the affidavit was not stale.

Williams also argues that the affidavit did not sufficiently connect Williams's drug trafficking to either of her residences. "When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there."[18] It is reasonable to infer that drug dealers often store evidence of drugs in their homes.[19] "[A]pplication of this inference is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities."[20]

---

[15] *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983).
[16] *United States v. Henley*, 941 F.3d 646, 653 (3d Cir. 2019) (quoting *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005)).
[17] *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973).
[18] *Stearn*, 597 F.3d at 558.
[19] *Id.*
[20] *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002).

Williams denies that the affidavit included evidence that the residences contained contraband linking them to Williams's drug activities. There are many factors that may connect a defendant's drug dealing to her home, including but not limited to:

> large-scale operations, a defendant's attempts to evade officers' questions about h[er] address, the conclusions of experienced officers regarding where evidence of a crime is likely to be found, the proximity of the defendant's residence to the location of criminal activity, probable cause to arrest the defendant on drug-related charges, and the tip of a concerned citizen that a specific stolen item would be found in the defendant's residence.[21]

Williams was running a large-scale drug operation. The affidavit avers that Williams lived at Rudy Road since 2005. The affidavit also avers that Williams left Rudy Road before the controlled drug buys, which occurred in close proximity to Rudy Road, and Williams was arrested in possession of three ounces of cocaine after the final controlled drug buy. Additionally, the affidavit avers, based on surveillance, direct observation, cell phone geolocation, and information from confidential informants, that Williams spent a considerable amount of time at Bradley Drive. When an undercover officer spoke with Williams at Bradley Drive, Williams provided a false name and falsely stated that she had just moved into the house. Panchik attested that he inferred that the residences were used for drug trafficking based on his experience, Williams's use of the residences, and their locations. This information, as well as additional information about the residences in the affidavit, establishes that the District Court correctly concluded that there was a sufficient nexus between both residences and the contraband.

---

[21] *Stearn*, 597 F.3d at 559–60 (footnotes, citations, and internal quotation marks omitted).

Even if the District Court had erroneously concluded that the magistrate had probable cause to issue the warrants, the District Court properly denied the motion to suppress because the officers executed the warrants in good faith. Under the good faith exception to the exclusionary rule, "a court should not suppress evidence seized under a warrant's authority, even if that warrant is subsequently invalidated, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"[22] "Ordinarily, the 'mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'"[23] However, "the good faith exception does not apply where the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"[24] Here, the affidavit was not so lacking that reasonably well-trained officers would have known that it was illegal despite the magistrate's authorization. The District Court properly denied the motion to suppress.

## III. CONCLUSION

For the above reasons, we will affirm the District Court's judgment and conviction orders.

---

[22] *Id.* at 561 (quoting *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002)).

[23] *Id.* (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).

[24] *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).