[No. C054252. Third Dist. Jan. 30, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN DALE NICHOLLS II, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II. and IV. of the Discussion.

COUNSEL

Gene D. Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Kelly E. Lebel, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SIMS, Acting P. J.**—After being convicted, on a no contest plea, of three counts of lewd and lascivious conduct upon a child under the age of 14 (Pen. Code, § 288, subd. (a)),[1] three misdemeanor counts of annoying/molesting a child (§ 647.6, subd. (a)), and five misdemeanor counts of possession of child

---

[1] Undesignated statutory references are to the Penal Code.

pornography (§ 311.11, subd. (a)), defendant John Dale Nicholls II, appeals from the trial court's denial of his motion to traverse and quash a search warrant and suppress child pornography evidence. (§ 1538.5, subd. (m) [authorizing review of suppression issues despite guilty plea].) Defendant argues probable cause was lacking, and material information was omitted from the application for the warrant. We shall affirm the judgment but shall modify it to reflect an additional day of custody credit, a point conceded by the People.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with three counts of lewd and lascivious conduct upon a 10-year-old child (§ 288, subd. (a)), three misdemeanor counts of annoying or molesting the same child (§ 647.6, subd. (a)), and five misdemeanor counts of possession of child pornography (§ 311.11, subd. (a)).

The victim was defendant's 10-year-old daughter, who lived with her mother. The facts, as reflected in the probation report, are that between October 14, 2004, and May 24, 2005, defendant, with lewd intent, touched the victim's chest with his finger (count one), had her place her hand on his penis (count two), and had her sit on his lap with his penis touching her buttocks (count three). The conduct underlying the misdemeanor annoying/molesting a child (counts four, five & six) were that defendant had his daughter spread her legs and expose her vagina to him and, on two occasions, exposed his penis and asked her to touch it, which she refused. As to the five counts of possession of child pornography, police found 10,000 still images and 47 movie files of child pornography on the hard drives of defendant's computer which they took from the garage attic of his parents' home (where defendant was residing before his arrest) pursuant to a search warrant.

The police detective's affidavit, which was submitted with the application for the warrant to search defendant's computer and laptop bag, described the detective's 17 years of law enforcement experience, which included formal training and extensive experience in various matters, including child abuse and sexual assaults. The affidavit did not specify the percentage of such cases but did identify specific training, such as a 40-hour P.O.S.T. (Peace Officer Standards and Training) child abuse and sexual assault certification at the Sacramento Regional Public Safety Training Center, 56 hours of training in computer

child pornography investigation and Internet crimes through the California Department of Justice Advanced Training Center and Sacramento Valley Hi-Tech Crimes Task Force, and advanced training in interviews and interrogation and computer forensics.

The affidavit set forth in detail the victim's description of multiple incidents of molestation by defendant, which the victim described in an MDIC (multidisciplinary interview center) interview witnessed by the affiant.

The affidavit described a portion of a tape-recorded telephone conversation from defendant in jail to his mother at her home in Pacific Grove, where defendant had been staying before turning himself in to the police. The affidavit stated:

"A summarized portion of the recorded conversation on 10/18/05, 5 minutes 17 seconds from the beginning, was as follows:

"['Defendant]: I PUT MY COMPUTER UP IN THE, UH, STORAGE, IN THE GARAGE, UH, MY LAPTOP BAG, SO IS IT GOOD—IS IT OK UP THERE?

"[']Mom: IT[']S AWFUL HOT UP THERE.

"['Defendant]: I DON'T CARE, IT'S NOT HOT AS—I'VE HAD THAT THING [PAUSE] MOM.

"[']Mom: ALL RIGHT.

"['DEFENDANT]: I JUST DON'T WANT ANYBODY MESSING WITH, UM, WITH THE PAPERWORK AND STUFF I HAVE IN THERE.

"[']Mom: ALL RIGHT, NO PROBLEM.[']²

"During this same jail telephone call on 10/18/05, the Suspect continued the conversation by telling his mother that he had some clothes that he left in

---

² This quote differs slightly from the transcript, which shows (1) defendant's mother interjected, "Yeah" or "Uh-huh" between the phrases of defendant's first statement, and (2) in the last sentence she said, "No one will touch it," not "No problem." Defendant does not claim these minor, immaterial differences are a basis for his appeal.

her dryer at her home. The Suspect's mother replied that she did not know where the clothes went. The Suspect requested that she look for his clothes because he has no other clothing for when he gets out of jail."

The affiant said that, from his "training, knowledge, and experience, as well as the experience of other skilled investigators and criminalists with whom I had spoken," he had learned that the following characteristics are generally found to exist in varying combinations and to be true in cases involving people who molest children: (1) they receive sexual gratification from fantasy involving pictures or writings about sexual activity with children; (2) they collect sexually explicit materials for sexual gratification and fantasy; (3) they use sexually explicit materials to lower children's inhibitions;[3] (4) they rarely dispose of their sexually explicit materials, especially when used in seduction of their victims; (5) they often correspond with other molesters to share information and support; (6) they rarely destroy the correspondence; (7) they use photographs to relive fantasies or actual encounters with the depicted children, etc.; (8) they go to great lengths to conceal and protect from discovery their collection of illicit materials; (9) they often correspond with others who share their interests through computerized bulletin boards; (10) they maintain diaries of their sexual encounters with children; (11) they collect books, magazines, computer files and other writings on the subject of sex with children; (12) they collect and maintain books, magazines, and other writings on the subject of sexual activity, which they use to seduce children; (13) they often keep mementos such as victims' underwear; (14) they obtain, collect, and maintain digital images and photographs of their victims; if they take a picture of a child in the nude, there is a high probability the child was molested before, during, or after the phototaking session because the act of the posing is a strong sexual stimulus for the individual.

The affidavit also related information that defendant drove a black Ford Bronco which was in his parents' garage, and the request was for a warrant to search the premises, specifically "in or around the computer and laptop bag [defendant] indicated was stored in the garage . . . ."

The search warrant was issued, and the police found 10,000 still images and 47 movie files of child pornography on the hard drives of defendant's computer.

---

[3] It is undisputed there is no evidence that defendant showed any sexually explicit images to his victim.

Defendant filed a motion to traverse and quash the search warrant and suppress any evidence found on his computer hard drives, in his laptop bag, and in luggage found in his Ford Bronco.[4] He argued the police lacked probable cause to search his computer and his vehicle based on his statement to his mother in a telephone call from jail, in which he said he put the computer in the "storage" in her garage for safekeeping. Defendant argued the detective who prepared the affidavit for the search warrant, by presenting an isolated part of the telephone conversation, deprived the magistrate of a chance to review the statement in context, which would have shown that the topic of computers came up when defendant's mother asked if he had access to computers in jail, and defendant also expressed a concern about his clothing in the same conversation, and therefore the commonsense conclusion was that defendant was merely concerned about his belongings. Defendant argued there was nothing indicating a fair probability that child pornography would be found on the computer, because there was no indication that defendant ever showed the victim any pornography, and to the contrary the child said she was not shown any images. Defendant argued that to say that there must be child pornography on a person's computer just because he is charged with lewd and lascivious conduct is a bare conclusion which does not constitute probable cause. The defense questioned the People's reliance on the affiant's "expertise."

The court denied the motion to traverse, concluding defendant failed to meet his burden to make a preliminary showing of an intentionally or recklessly false material statement or omission by the affiant, and the affidavit was sufficient on its face. It was immaterial that the issue of computers was raised by defendant's mother, asking about computers in jail. "[T]he reason I find it is not material is based upon what's in the facts of the affidavit. [¶] The officer made statements about his training and education and experience in dealing with child molest and that it's his experience that if an individual will—that based on that experience that an individual who participates in child molest will intend to record that in different ways, and this is based upon not only training but interviews of the victims, witnesses, and suspects, and that the information which is kept by the defendants, not unusual to be

---

[4] It is not clear what evidence, if any, was found in defendant's vehicle. Defendant's motion said the laptop and a laptop bag were seized from the garage attic, and a suitcase was seized from his Ford Bronco (which was in the garage). Defendant's motion said the computer hard drives had been removed from the computer and were found in a small box, but defendant did not say where the box was found. On appeal, defendant lumps everything together and provides no separate argument regarding the vehicle. Since defendant's vehicle and computer were both in the garage of his parents' home, and defendant's telephone conversation was not entirely clear as to exactly where in the garage he placed the computer, the application for and issuance of a warrant to search the vehicle in the garage was reasonable, and defendant fails to show otherwise.

kept by defendants, can be anything from handwritten journals to photographs, traditional type, as well as those handed through electronic media. [¶] So what the Court finds in the material on the motion to traverse is the fact that the defendant owned a computer. In other words, he had possession of a computer. And in this case, that is, in fact, what the Court finds was material for the purpose of the magistrate, is to acknowledge that the defendant had a computer in his possession and where he had placed that computer. [¶] So I don't find that the lack of the other information goes to the materiality, and I think that's really what we're talking about for the purpose of traverse."

As to the motion to quash and suppress, the court denied the motion, stating the affiant showed sufficient knowledge, experience, and training, and the affidavit was sufficiently factual and not conclusionary, and it showed sufficient probable cause to search defendant's vehicle in the garage as well as the computer.

After denial of the motion, defendant changed his plea to no contest to all charges.

The trial court found defendant guilty on all charges and sentenced him to six years (midterm) on count one (lewd and lascivious conduct), concurrent six-year terms on counts two and three (lewd and lascivious conduct), and concurrent 10-day sentences for each of the eight misdemeanor counts (three counts of annoying/molesting a child and five counts of possession of child pornography).

## DISCUSSION

### I. *Standard of Review*

In reviewing denial of motions under section 1538.5, "[w]e apply the Fourth Amendment standard in deciding what remedy may be available following a claim of unlawful search or seizure. [Citations.] [¶] ' "An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which

involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." ' [Citation.]" (*People v. Ayala* (2000) 24 Cal.4th 243, 279 [99 Cal.Rptr.2d 532, 6 P.3d 193].)

"The question facing a reviewing court asked to determine whether probable cause supported the issuance of the warrant is whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing. [Citations.] 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation.] . . . The magistrate's determination of probable cause is entitled to deferential review. [Citations.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1040–1041 [99 Cal.Rptr.2d 1, 5 P.3d 68].)

However, we independently determine whether, on the facts as found by the magistrate, the search was reasonable under the Fourth Amendment. (*People v. Hunter* (2005) 133 Cal.App.4th 371, 377 [34 Cal.Rptr.3d 818].)

II. *Motion to Traverse*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Probable Cause*

Defendant argues the probable cause affidavit failed to establish a fair probability that child pornography would be found in defendant's laptop computer, laptop bag, or the Ford Bronco. We disagree.

"Probable cause" to justify a search warrant means "a fair probability that . . . evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 103 S.Ct. 2317].) As

---

\*See footnote, *ante*, page 703.

defendant acknowledges, we apply deferential review to determine whether the magistrate had a substantial basis for concluding a fair probability existed that the search would uncover wrongdoing. (*People v. Kraft, supra*, 23 Cal.4th at pp. 1040–1041.)

Defendant argues the affidavit in this case was deficient because it (1) did not indicate defendant had used the laptop or any computer or computer-related media in the alleged molestation of his daughter, (2) did not indicate he used child pornography in the alleged molestation, and (3) did not indicate he expressed any general interest in receiving or transmitting child pornography, through the computer or otherwise.

However, it was not necessary for the affidavit to indicate any of those things. The affidavit sufficed by setting forth (1) the victim's description of the molestations; (2) defendant's storing away of his computer in the garage attic; (3) defendant's phone call with his mother expressing his concern that no one "mess" with his computer; and (4) the affiant's potent testimony, based on the officer's training, knowledge, and experience, that people who molest children have generally been found to engage in activity such as (a) receiving and collecting sexually explicit materials for sexual gratification; (b) corresponding with other molesters to share information and support, including use of computerized bulletin boards; (c) preserving the correspondence; (d) using photographs to fantasize about encounters with children; (e) maintaining diaries of their sexual encounters with children; (f) collecting books, magazines and computer files on the subject of sex with children; and (g) going to great lengths to conceal their collection of illicit materials.

Defendant argues we should disregard his phone call and the expert opinion about the habits of child molesters. We disagree.

█ Thus, law enforcement officers may draw upon their expertise to interpret the facts in a search warrant application, and such expertise may be considered by the magistrate as a factor supporting probable cause. (*People v. Andrino* (1989) 210 Cal.App.3d 1395, 1400–1402 [259 Cal.Rptr. 17] [evidence of telephone traffic and its interpretation by experienced officer as consistent with bookmaking activity, coupled with the defendant's criminal record, established probable cause for issuance of search warrant].) Here, the search warrant application did not depend solely on the expert's opinion

about activities of child molesters, but the expert opinion together with the victim's statements, defendant's storage of his computer in a garage attic, and his expressed concern that no one "mess" with the computer.

As to the telephone conversation in which defendant expressed concern that no one "mess" with the computer, we have explained defendant's statement was properly considered. Defendant tries to minimize its impact, saying it showed only that his primary concern was to make sure that his property (laptop, clothing) was not harmed. However, together with the other information in the affidavit—including the victim's description of multiple incidents of molestation by defendant, as well as the affiant's experience and training—defendant's expressed concern that no one "mess" with his computer, which he stored out of the way in garage "storage," adds to a reasonable person's conclusion that there was a fair probability the search would uncover wrongdoing. That defendant also asked his mother about his clothes is without consequence because, unlike the computer (which he stored in an out-of-the-way place), he left the clothes in a place—the clothes dryer—where they would be in other people's way and would presumably be moved by people wanting to use the dryer, with a concomitant risk the clothes would get misplaced (as they apparently did). Defendant did not ask about any other belongings. Also without consequence is the lack of any indication that defendant used pornography in molesting his daughter. His concern about his computer, together with the described molestations, provided a sufficient link between defendant and the computer habits of child molesters described by the affiant. Contrary to defendant's view, the record here shows more than a mere hunch.

We also reject defendant's assertion that, because the phone call occurred several months after he was arrested, no reasonable magistrate could find probable cause. Defendant cites no evidence supporting the timing. To the contrary, the affidavit and probation report reflect defendant was taken into custody and transported from the Pacific Grove Police Department to Sacramento County on September 2, 2005—about a month and a half before the October 18, 2005, telephone call.

We conclude the record supports the magistrate's finding of sufficient probable cause for issuance of the search warrant, and we independently conclude the search was reasonable under the Fourth Amendment.

Defendant relies on three cases from other jurisdictions. He acknowledges they are not binding on us (*Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1441 [114 Cal.Rptr.2d 69]), but he argues they are persuasive. We shall conclude they do not help him.

Thus, defendant cites *U.S. v. Weber* (9th Cir. 1990) 923 F.2d 1338, which held there was no probable cause to search the defendant's home for child pornography based on information that the defendant (1) received advertising material described by a customs agent as apparent child pornography in 1985 and (2) placed an order for child pornography (in response to an advertisement sent by the government) in 1987. The police officer's affidavit gave a general description of the proclivities of pedophiles but did not say that the defendant's demonstrated interest in child pornography placed him in the category of those pedophiles about whom a fellow officer (whose generalizations about pedophiles appeared in the affidavit) had expertise. (*Id.* at p. 1341.) *Weber* said: "It is well established that expert opinion may be presented in a search warrant affidavit. [Citation.] But if the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class." (*Id.* at p. 1345.) *Weber* concluded the "expert" testimony lacked foundation and consisted only of "rambling boilerplate recitations designed to meet all law enforcement needs." (*Ibid.*) It was clear the "expert" portion of the affidavit was not drafted with the facts of the case in mind. (*Ibid.*)

However, *Weber* is distinguishable from this case because in *Weber* there was no evidence of any specific act of child molestation. (*U.S. v. Weber, supra,* 923 F.2d at p. 1345 ["there was not a whit of evidence in the affidavit indicating that Weber was a 'child molester . . .' "].) Here, there was abundant evidence of child molestation, and the affidavit recited not only generalities about child molesters but also the statements of the child-victim describing incidents of molestation and defendant's expressed concern that no one "mess" with his computer. Together with defendant's expressed concern about his computer, there was sufficient foundation that defendant was a member of the class of persons who tended to keep child pornography on a computer.

Defendant cites dictum from *U.S. v. Zimmerman* (3d Cir. 2002) 277 F.3d 426 (*Zimmerman*), where the government *conceded* there was no probable cause to search for child pornography. (*Id.* at p. 432.) The warrant to search the defendant's home and computer for adult and child pornography was based on an affidavit which (1) recounted various incidents in which the defendant, a high school teacher and basketball coach, allegedly sexually accosted students, (2) said the defendant showed some of the alleged victims

a video clip depicting a woman performing oral sex on a horse, and (3) gave a postal inspector's opinion that persons with a sexual interest in children may possess child pornography and keep it in their homes for extended periods of time. The inspector did not refer to the defendant or the facts of the case. (*Id.* at p. 430.) The government conceded lack of probable cause for child pornography, and the issues in *Zimmerman* were whether probable cause to search for *adult* pornography was lacking because the information was stale (*Zimmerman* said yes), and whether the child pornography evidence should come in under the good faith exception (*Zimmerman* said no). (*Id.* at pp. 433–438.)

The *Zimmerman* dictum cited by defendant said that, because it was undisputed that there was no probable cause to search for child pornography, the court did not need to determine what weight, if any, to give to the postal inspector's opinion, but the court noted there was nothing in his statement indicating he knew anything about the defendant, and if the court had to decide the matter it would probably decide the inspector's statement was insufficient. (*Zimmerman, supra,* 277 F.3d 426, 433, fn. 4.)

Since the government conceded lack of probable cause in *Zimmerman*, that case is not even arguably supportive of defendant's appeal. Defendant quotes *Zimmerman*'s reference to a prior case in which the same court held a similar statement by the same postal inspector was conclusory and insufficient to establish a sufficient nexus between the contraband and the defendant's residence. (*Zimmerman, supra,* 277 F.3d 426, 433, fn. 4.) However, defendant does not discuss or rely on that earlier case, and we therefore need not discuss it.

Defendant's final out-of-state case is from a Florida District Court of Appeal, *Burnett v. State* (Fla.Dist.Ct.App. 2003) 848 So.2d 1170 (*Burnett*), which held a law enforcement officer's affidavit was insufficient to support a conclusion that child pornography would be found in the computer in the defendant's bedroom. (*Id.* at pp. 1173–1174.) There, the police in a consensual search of the defendant's bedroom found a lewd videotape made by the defendant of two naked young boys. (*Id.* at pp. 1171, 1174.) The affidavit described the videotape, set forth specifics about the officer's expertise and training in child sex abuse cases, and gave her opinion that people involved in child pornography, including people such as the defendant, who videotaped a child's genitals and buttocks, commonly had child pornography on their computers. (*Id.* at p. 1172.) The officer also stated her belief, due to the defendant's lying about the videotape, that other child pornography may be stored on the stacks of videotapes in the defendant's room. (*Ibid.*)

In holding the affidavit failed to establish probable cause, the *Burnett* court said the affidavit did not state that the titles of any of the stacked videotapes

suggested child pornography. (*Burnett, supra,* 848 So.2d 1170, 1174.) The appellate court said the initial complaint was about a lewd videotape of young boys, and nothing suggested the defendant used his computer to transmit or store child pornography. (*Ibid.*) The affidavit "failed to describe a factual link between the video camera and the functioning capability of the home computer so that images could be transferred. The affidavit also omitted any factual averment that the computer was linked to the internet or that the video camera was compatible with the computer so that images could be downloaded, transferred, or transmitted." (*Ibid.*) Additionally, said the Florida court, the affidavit set out only the officer's expertise in child sex abuse cases, it did not set out any expertise in matters of child pornography. (*Id.* at pp. 1172, 1174.)

*Burnett* is arguably distinguishable because in that case there was a lack of foundational expertise. No such problem appears in this case. To the extent that the Florida court declined to give weight to the affidavit for reasons other than the lack of qualifications of the expert, we respectfully disagree with *Burnett.*

In sum, none of defendant's cited cases helps him.

█    Here, we do not have to decide whether the detective's expert opinion, standing alone, was sufficient to show probable cause. The search warrant application was supported by more than the detective's opinion that child molesters collect and store child pornography. It was supported by statements of the child that defendant molested her as recently as two weeks earlier, and by his storing his computer in a hot garage and asking his mother not to let anyone "mess" with it.

We conclude issuance of the search warrant was proper, and the trial court's denial of the motion to traverse, quash, and suppress evidence was proper. We need not comment on the People's citation of research studies about child molesters, which are not part of the record. We need not address the parties' arguments as to whether the good faith exception to invalid warrants should apply.

IV. *Pretrial Custody Credits**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 703.

## DISPOSITION

The abstract of judgment is modified to show actual credits of 443 days, and total credits of 509 days. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy of it to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

Davis, J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 2008, S161594.