Filed 7/27/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DANIEL BENJAMIN WADLEIGH,<br><br>      Defendant and Appellant. | A165017<br><br>(San Mateo County<br>Super. Ct. No. 20-SF-002550-A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on July 12, 2023, be modified as follows.

1.    On page 1, in the second paragraph, modify the sentence that starts with "Wadleigh further contends that the officer . . ." to delete ", Detective Donald DeRespini,". The modified sentence should read:

> Wadleigh further contends that the officer who prepared the warrant affidavits recklessly and inaccurately described the first image.

2.    On page 2, the first full paragraph, modify the last sentence that begins with "But while we find no error in this case . . ." to add the following after the word "cause": ", at least in cases where a determination that the images constitute prohibited material requires subjective judgment." The modified sentence should read:

But while we find no error in this case, the fact that the officer misdescribed one of the images (as the Attorney General acknowledges), and testified that he was taught *not* to include images of suspected child pornography in warrant applications, prompts us to explain why we agree with other courts that the preferable course is to include the actual images purporting to establish probable cause, at least in cases where a determination that the images constitute prohibited material requires subjective judgment.

3. On page 13, the first full paragraph, modify the sentence that begins with "We also agree that . . ." to add ", under the circumstances," after "that." The modified sentence should read:

We also agree that, under the circumstances, DeRespini *should* have included the actual images in the warrant applications.

4. On pages 17 to 18, the last paragraph on page 17 that continues onto page 18, modify the sentence that begins with "We reiterate that officers should . . ." to replace "particularly" with "at least." The modified sentence should read:

We reiterate that officers should, whenever possible, include images of suspected child pornography in warrant applications, at least where, as here, a subjective evaluation is necessary to determine whether the images' content is prohibited.

There is no change in the judgment.

The petition for rehearing, filed July 25, 2023, is denied.

Dated: July 27, 2023                    STREETER, Acting P. J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DANIEL BENJAMIN WADLEIGH,<br><br>      Defendant and Appellant. | A165017<br><br>(San Mateo County<br>Super. Ct. No. 20-SF-002550-A) |

Daniel Wadleigh appeals from the denial of his motion pursuant to Penal Code section 1538.5[1] to suppress evidence found during searches of his residence and electronic accounts. After the trial court found the evidence admissible, Wadleigh pled no contest to one count of possessing child pornography in violation of section 311.11, subdivision (a).

Wadleigh argues that the warrants authorizing the two searches were invalid because their descriptions of four images in his electronic accounts lacked sufficient factual detail from which the magistrate could determine that (1) the subjects were minors and (2) the images depicted sexual conduct within the meaning of section 311.4, subdivision (d)(1). Wadleigh further contends that the officer, Detective Ronald DeRespini, who prepared the warrant affidavits recklessly and inaccurately described the first image. The officer,

---

[1] Further statutory references are to the Penal Code.

Wadleigh argues, should have included the actual images in the warrant applications.

We conclude that the warrant applications contained sufficient factual detail to establish probable cause, and therefore affirm. But while we find no error in this case, the fact that the officer misdescribed one of the images (as the Attorney General acknowledges), and testified that he was taught *not* to include images of suspected child pornography in warrant applications, prompts us to explain why we agree with other courts that the preferable course is to include the actual images purporting to establish probable cause.

BACKGROUND

### A. *The Warrants and Searches*

Adobe Systems Incorporated (Adobe) reported a "Cybertip" to the National Center on Missing and Exploited Children (NCMEC) in June 2019.[2] NCMEC reported the tip to law enforcement. Detective Ronald DeRespini of the San Mateo County Sheriff's Office investigated the tip.

The tip stated that someone with the username "mrwadleigh@sbcglobal.net" had uploaded 23 images of suspected child pornography to an Adobe account. The Adobe account was associated with an IP address linked to an AT&T Internet Services (AT&T)

---

[2] As the warrant affidavit explained, "NCMEC serves as a clearinghouse of information about missing and exploited children and operates a 'CyberTipline' that the public may use to report internet-related child sexual exploitation. NCMEC forwards the Cybertips to the appropriate law enforcement agency for further investigation." (See 18 U.S.C. § 2258A [requiring electronic communication service providers to report apparent violations of child pornography laws to NCMEC].)

2

account.  DeRespini prepared a search warrant application to gather subscriber information for both accounts.  In his affidavit supporting the warrant application, DeRespini identified four of the 23 images as child pornography.  He described those images as follows:

> "File name: file_IMG_6801.jpg
>
> "Photo description: The image depicts a young female, who appears to be under the age of 16 years old laying on her right side, on a bed.  She appears to be nude except for fishnet stockings, with a pink bow affixed to them.  Her chest is fully exposed, and she appears to be engaged in sexual intercourse with an almost completely obscured male.  She is looking towards the male, and she has both of her hands placed on the bed.
>
> "File name: file_IMG_6821.jpg
>
> "Photo description: The image depicts two young females who appears [sic] to be under the age of 13 years old, laying down on a towel.  They both appear to be in bikini-type swimwear.  The female in the lower part of the image has her legs spread open in a sexual manner to arouse the viewer.
>
> "File name: file_IMG_6829.jpg
>
> "Photo description: The image depicts a young female, who appears to be under the age of 13 years old.  She is wearing a blue and yellow bathing suit.  She is faced toward the viewer.  She has her legs spread open in a sexual manner to arouse the viewer, and the imprint of her labia majora is clearly visible.
>
> "File name: file_IMG_68371.jpg
>
> "Photo description: The image depicts a young female, who appears to be under the age of 13 years old.  She is wearing a white and pink ballerina outfit.  She is faced toward the viewer.  She has her legs spread open in a sexual manner to arouse the viewer, and the imprint of her labia majora is clearly visible. . . ."

(Some internal formatting omitted.)

DeRespini explained that those who possess child pornography tend to keep the materials indefinitely. He also noted that his "observations of the subjects' approximate ages are based on the following. I am a father, as well as an uncle, and have observed the changes in physical appearance, stature, and body structure of my children, nieces, and nephews as they aged. I was also assigned as a school resource officer for four and a half years and interacted with thousands of children in this age range, and observed the changes in physical appearance, stature, and body structure as the children grew older. Finally, I have been investigating child pornography cases for over a year and have viewed thousands of pictures of children in this age range, and have seen the differences in appearance, stature, and body structure of the children in these images." DeRespini concluded, therefore, that the images "depict a minor performing sexual acts, as well as minors depicted in sexually suggestive positions," and that a search of the Adobe account would show additional evidence of crimes involving child pornography. He also sought information from both Adobe and AT&T to identify the owner of the accounts and the owner's geographical location.

DeRespini did not include any of the images with the warrant application. A magistrate authorized the search based on the application.

After executing the search warrant, DeRespini learned the address of Wadleigh's likely residence and that the Adobe and AT&T accounts belonged to Wadleigh. The search yielded additional evidence of child pornography: three zip files, two of which contained a combined

total of 41 images of suspected child pornography. In the following months, DeRespini conducted social media searches and surveillance at Wadleigh's suspected home. Through the searches and surveillance DeRespini confirmed Wadleigh's residence and identified Wadleigh's vehicle.

DeRespini prepared a second search warrant application. This time, he sought authorization to search Wadleigh's person, vehicle, and residence; to search for and seize his electronic devices and stored digital media; and to conduct a forensic examination of any items seized. DeRespini restated his experience and training related to child pornography offenses, including the paragraph describing his experience determining the relative age of image subjects, and elaborated on the reasons he expected to find additional child pornography in the search. The affidavit repeated verbatim the description of the four images in the first search warrant, but again did not include the actual images. The second warrant application also did not contain any of the 41 images found in the first search.

A different magistrate judge signed the second warrant. Law enforcement officers executed the warrant and seized various items that contained additional images of suspected child pornography.

### B. Court Proceedings

Wadleigh was charged with one felony count of violating section 311.11, subdivision (a). He later moved to suppress the evidence gathered in the searches. The trial court construed Wadleigh's motion as seeking not only to suppress the evidence, but also to traverse the search warrant pursuant to *Franks v. Delaware* (1978) 438 U.S. 154 (*Franks*).

In January 2021, the trial court first heard argument and took testimony on the motion to suppress and to traverse the warrants. Among other things, DeRespini testified that he had been taught *not* to include images of suspected child pornography in warrant applications, and had never included them in the approximately one dozen applications he had done.

Later, the court held a second suppression hearing and orally denied the motion to suppress and to traverse the warrants. As the court explained, the "issue then really comes down to [*United States v.*] *Perkins* [(9th Cir. 2017) 850 F.3d 1109 (*Perkins*)] whether . . . a warrant is invalid if the magistrate did not actually view the images themselves. . . . [T]he Court did find . . . that the first image that was described by [DeRespini], the Court cannot say that was an extremely accurate description of the first image."[3]

"The next three images the Court found that the descriptions were very, very accurate as to what those images were. And so the question would be, if the Court believes that *Perkins* mandates a viewing of the images, then we would stop there. But, again, as I stated the Court in reading *Perkins* and putting all of the circumstances together . . . that the Court would find that the officer's background and experience and his descriptions were accurate for the magistrate reviewing the warrant and specific enough for the magistrate reviewing the warrant to base the finding of probable cause on those descriptions.

---

[3] The judge also stated: "I would agree with [Wadleigh] for that first image that the description was difficult to find out what [DeRespini] w[as] talking about. It didn't really, to me, match the photograph."

"And for that reason, the Court would deny the motion to suppress the evidence or to traverse the warrant."

Wadleigh pled no contest to one count of violating section 311.11, subdivision (a), and the trial court sentenced him to two years of probation and six months of jail time. Wadleigh timely appealed.

## DISCUSSION

On appeal, Wadleigh claims three primary errors arising from the two warrants. First, Wadleigh asserts that DeRespini's factual descriptions in the warrant applications were insufficient to establish probable cause that the subjects of the four images were minors. Second, he contends that DeRespini's descriptions failed to establish probable cause that the four images depicted prohibited sexual conduct as described in section 311.4, subdivision (d). Third, Wadleigh contends that DeRespini included in the applications a recklessly inaccurate description of the first image. Under *Franks*, he argues, the evidence discovered in the searches should have been excluded because the magistrate would not have found probable cause for the searches if the inaccurate description had been omitted from the warrant applications and the image had been provided in its place. (*Franks*, *supra*, 438 U.S. at pp. 155–156.) Wadleigh also argues that, if we conclude the warrants are invalid, the good faith exception set forth in *United States v. Leon* (1984) 468 U.S. 897 (*Leon*) does not save the seized evidence from suppression.

We disagree with Wadleigh on the first two points. As to the third point, we conclude that, even assuming DeRespini's inaccurate description of the first image was made recklessly or intentionally, probable cause still existed for the searches based on the remaining

7

contents of the warrant applications.  Having rejected these arguments, we do not reach the good faith question under *Leon*.

### 1. *Standard of Review*

" 'In California, issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards.' " (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212; see *People v. McWilliams* (2023) 14 Cal.5th 429, 437, fn. 2.) When reviewing such issues, "we defer to the [trial] court's factual findings, express or implied, where supported by substantial evidence. [Citation.]  To determine whether, based on the facts so found, a search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Fayed* (2020) 9 Cal.5th 147, 186.)

### 2. *Probable Cause*

To determine whether probable cause exists, we ask "whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing." (*People v. Kraft* (2000) 23 Cal.4th 978, 1040.)  " ' "The test for probable cause is not reducible to 'precise definition or quantification.' " [Citation.]  But . . . it is " 'less than a preponderance of the evidence or even a prima facie case." ' " (*People v. Rowland* (2022) 82 Cal.App.5th 1099, 1110 (*Rowland*).)

Section 311.11, subdivision (a) prohibits the knowing possession of "any . . . image . . . the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4."  Section 311.4,

8

subdivision (d)(1) defines " 'sexual conduct' " to include "any of the following, whether actual or simulated: sexual intercourse, . . . [or] exhibition of the genitals or pubic . . . area for the purpose of sexual stimulation of the viewer. . . ." The parties appear to agree that the first image should be analyzed within the category of actual or simulated sexual intercourse and the second through fourth images within the category of the exhibition of the genitals or pubic area for the purpose of sexual stimulation of the viewer. We must therefore consider whether the magistrates, having considered the warrant applications, including DeRespini's descriptions of the images, had a substantial basis to conclude there was a fair probability that Wadleigh possessed child pornography.

Wadleigh argues the warrant applications failed to establish probable cause in two ways—first, by failing to provide sufficient information as to the image subjects' age, and second, by failing to provide sufficient information establishing that the images depicted sexual conduct. We consider these arguments in turn.

### a. The Affidavits' Descriptions of the Subjects' Ages

Wadleigh argues that DeRespini's affidavits did not establish probable cause as to the image subjects' minority.

A warrant affidavit that recites "a mere conclusory statement" is not sufficient to establish probable cause. (*Illinois v. Gates* (1983) 462 U.S. 213, 239.) Here, the entirety of DeRespini's treatment of the image subjects' ages were his statements that: "The image[s] depict[] a young female [or females], who appear[] to be under the age of 16 [or 13] years old." These statements, standing alone, are conclusory. DeRespini did not supply even an estimated three-year age range for

9

the image subjects, as has been found sufficient, in context and along with other information, in federal cases. (See *United States v. Battershell* (9th Cir. 2006) 457 F.3d 1048, 1053–1054 (*Battershell*).) In *Battershell*, the affiant-officer investigating child pornography included in the warrant application a description of two images. (*Id.* at p. 1049.) The first "showed 'a young female (8–10 YOA) naked in a bathtub. The second picture showed another young female having sexual inter-course with an adult male.' " (*Ibid.*) In grammatical context and supported by reliable reports from two civilians that the defendant had images on his computer of "kids having sex," the court held that the warrant application's reference to the " 'young female having sexual inter-course' " in the second picture was sufficient to establish probable cause that the "young female" was between eight and ten years old, and therefore a minor. (*Id.* at pp. 1049, 1053–1054.)

Here, as in *Battershell*, the warrant affidavits contained more information than just DeRespini's rough estimates of the image subjects' age. The NCMEC cybertip was the equivalent of a reliable tip from a concerned citizen, a factor supporting a finding of probable cause. (*Rowland*, *supra*, 82 Cal.App.5th at pp. 1103, 1112–1118; see *Battershell*, *supra*, 457 F.3d at p. 1054.) DeRespini also explained his training and experience in both warrant affidavits: He is a father and an uncle; had been a school resource officer for four and half years and during that time encountered thousands of children in this age range; had worked on child pornography cases for more than a year at the time he completed the affidavits; and in the course of his work had viewed thousands of images of children in this age range. This experience allowed him to evaluate "the differences in appearance,

10

stature, and body structure of the children in these images" and to estimate their ages. (*People v. Nicholls* (2008) 159 Cal.App.4th 703, 711–712 [an officer may interpret facts in warrant applications based on their expertise and a magistrate may consider their expertise as a factor supporting probable cause]; *Battershell*, 457 F.3d at p. 1054 [conclusory age estimates, without further detail, may establish probable cause]; see also *United States v. Wiegand* (9th Cir. 1987) 812 F.2d 1239, 1243 ["Common sense suggests that most of the time one can tell the difference between a child and an adult"].) Together, the rough estimates, along with the presumptively reliable Cybertip and DeRespini's training and experience, were sufficient to establish probable cause as to the subjects' minority.[4]

Wadleigh points to *United States v. Syphers* (1st Cir. 2005) 426 F.3d 461, as mandating that warrant applications include either the images themselves or a description of the physiological and developmental features of the image subjects. But *Syphers* never actually ruled on the issue; instead, the court concluded that, even if the warrant applications were insufficient as to age, the *Leon* good faith exception excused their insufficiencies. (*Id.* at pp. 466–467; cf. *United States v. Pavulak* (3d Cir. 2012) 700 F.3d 651, 661 [concluding that bare assertion by two civilians that they had observed defendant " 'viewing child pornography' of females between twelve and eighteen years old," without material corroboration, did not establish probable cause that defendant possessed child pornography].)

---

[4] Because several factors support a finding of probable cause as to the subjects' age, *People v. Vital* (2019) 40 Cal.App.5th 925, 936, a case in which there was "no evidence of . . . age," is not relevant here.

11

Nonetheless, as we will discuss further *post*, we agree with Wadleigh that "a neutral and detached magistrate" (*Illinois v. Gates*, *supra*, 462 U.S. at p. 240), should in general view suspected images of child pornography and make the ultimate determination that the depicted individuals are minors. On the facts here, however, we conclude that the magistrate had a substantial basis to conclude the images depicted minors.

### b. The Affidavits' Description of Sexual Conduct

Wadleigh next argues that DeRespini's descriptions in the warrant affidavits were insufficient to establish that the images depicted sexual conduct.[5] According to Wadleigh, an individual viewing the images would need to make a series of subjective judgment calls to so conclude: With respect to the first image, one would have to conclude that the subject was having sexual intercourse with another person, and with respect to the second through fourth images, that the subjects were posed and the images composed to exhibit their genital and pubic areas "for the purpose of sexual stimulation of the viewer." (§ 311.4, subd. (d)(1).) Wadleigh does not identify any specific additional detail that should have been included in the descriptions, but rather points to *Perkins* as creating a bright line rule that any

---

[5] The federal child pornography statute prohibits the "lascivious exhibition of the . . . genitals[] or pubic area of any person." (18 U.S.C. § 2256, subd. (2)(A)(v).) "[E]xhibiting the genitals or pubic . . . area for the purpose of sexual stimulation of the viewer" under section 311.4, subdivision (d)(1), "means the same thing as a lascivious exhibition of the genitals" under federal law, and accordingly we rely here on federal precedents. (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1754 (*Kongs*), citing *United States v. Wiegand*, *supra*, 812 F.2d at p. 1243.)

warrant application must include the images themselves, not just descriptions.

We agree that, particularly with respect to the second through fourth images, a person would have to make subjective judgment calls regarding whether they exhibit the subjects' genitals or pubic areas to stimulate the viewer sexually.[6] We also agree that DeRespini *should* have included the actual images in the warrant applications. We nonetheless conclude that under controlling law, DeRespini was not required to include the images themselves, and his descriptions of the images were sufficient to establish probable cause for the searches.

*Perkins* does suggest that law enforcement must include any images in warrant applications for searches of child pornography. (See *Perkins*, *supra*, 850 F.3d at pp. 1118, 1119.) The actual images are particularly important where the conduct allegedly involves minors exhibiting their genitals or pubic areas lasciviously or, analogously, for the sexual stimulation of the viewer—in either case an inherently subjective conclusion. (*Id.* at pp. 1116, 1118; *Battershell*, *supra*, 457 F.3d at pp. 1051–1054; *United States v. Brunette* (1st Cir. 2001) 256 F.3d 14, 19 (*Brunette*) ["Ordinarily, a magistrate judge must view an image in order to determine whether it depicts the lascivious exhibition of a child's genitals"]; see fn. 5, *ante*; cf. *Battershell*, 457 F.3d at p. 1051 [noting that other, objective categories of sexual conduct, such as sexual intercourse, bestiality, and masturbation are " ' clearly defined and easily recognized' "].)

---

[6] Because the first image raises potential *Franks* and other issues, as described *post*, we consider only the descriptions of the second through fourth images.

13

But *Perkins'* ostensible rule arose from unique facts. (See *Perkins*, *supra*, 850 F.3d at p. 1118 ["Given *the circumstances of this case*, [the officer] was required to provide copies of the images for the magistrate's independent review" (italics added)].) There, two different officers from different jurisdictions reviewed the same images, applied similar legal standards, and came to conflicting conclusions regarding whether one of the images was child pornography.[7] (*Id.* at pp. 1113–1114, 1117 & fn. 3.) The officers also described the assertedly pornographic image in materially different ways: One officer described the image subject's breasts and pubic areas as "clearly visible," while the other wrote that they were of "decrease[d] prominence" and a "minor aspect" of the photo, respectively. (*Id.* at pp. 1113–1114.) And *Perkins* was decided over a dissent; even the judges disagreed as to whether the images were child pornography. (Compare *id.* at p. 1122 ["Viewing the [disputed] image as a whole, we conclude . . . that it does not depict the 'lascivious exhibition of the genitals or pubic area' "] with *id.* at p. 1128 (dis. opn. of Murguia, J.) ["The images in this case are at the very least borderline child pornography"].) That jurists, having carefully considered the matter, can come to opposing conclusions regarding the images only underscores that *Perkins* was a uniquely challenging case.

We also do not believe *Perkins* could have set forth an absolute rule in the face of contrary precedent in a highly analogous case. In *New York v. P.J. Video, Inc.* (1986) 475 U.S. 868, 874, fn. 5, the Supreme Court explained that it had "never held that a magistrate

_____

[7] The officers agreed the second image was not. (*Perkins*, *supra*, 850 F.3d at pp. 1113, 1114.)

14

must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. [Citation.] On the contrary, we think that a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue." Indeed, subsequent Ninth Circuit and California cases have concluded that a magistrate need not necessarily view the actual images of child pornography, even while at times acknowledging the better practice is to include them in warrant applications. (See *Rowland*, *supra*, 82 Cal.App.5th at p. 1120; *United States v. Rosenow* (9th Cir. 2022) 50 F.4th 715, 738–739; *United States v. Kaiser* (9th Cir. 2019) 771 Fed. Appx. 441, 443; see also *United States v. Hill* (9th Cir. 2006) 459 F.3d 966, 969, fn. 4. [pre-*Perkins* ruling]; *United States v. Smith* (9th Cir. 1986) 795 F.2d 841, 847 [same]; *United States v. Pena* (9th Cir. 2008) 266 Fed. Appx. 574, 576 [same]; *United States v. Moyer* (9th Cir. 2007) 256 Fed. Appx. 61, 62–63 [same].)

While *Perkins* did not set forth a bright line rule, its facts— including the "borderline" nature of the images—highlight the reasons law enforcement officers should routinely provide images of suspected child pornography in warrant applications and thereby allow magistrates to serve their function as neutral and independent arbiters of probable cause. (See *United States v. Pavulak*, *supra*, 700 F.3d at p. 661.) By applying our criminal laws to warrant applications, magistrates guard the fundamental privacy interests animating the Fourth Amendment. "The right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society

15

which chooses to dwell in reasonable security and freedom from surveillance.  When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman . . . ." (*Johnson v. United States* (1948) 333 U.S. 10, 14.) Thus, the Fourth Amendment's "protection consists in requiring that [] inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (*Id.* at pp. 13–14.)  And by applying Fourth Amendment principles to child pornography laws, magistrates also protect fundamental First Amendment and other interests.  "Child pornography is a particularly repulsive crime, but not all images of nude children are pornographic.  For example, 'a family snapshot of a nude child bathing presumably would not' be criminal.  [Citation.] Moreover, the law recognizes that some images of nudity may merit First Amendment protection because they serve artistic or other purposes, and possessing those images cannot be criminal." (*United States v. Hill, supra*, 459 F.3d at p. 970; see also generally *Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234 [child pornography laws implicate the First Amendment]; *New York v. Ferber* (1982) 458 U.S. 747 [similar].)

Careful deliberation and balancing of the various legal interests at stake are all the more important when the images at issue require subjective evaluation.  (*Perkins, supra*, 850 F.3d at pp. 1122–1123 ["We emphasize that this was an investigation of a suspected 'lascivious' image . . . the meaning of which is subjective"].)  As a best practice, a neutral magistrate should have had the opportunity in *Perkins*, and here, to make a probable cause determination using the best

information available—the images themselves. Adding a layer of subjective evaluation by law enforcement officers—to say nothing of the possibility for misdescription—does not aid a magistrate's probable cause determination, but rather merely invites a later challenge by the defendant. We recognize that, when the officer does not personally appear before the magistrate and instead relies on email, there may be technological issues that need to be resolved, such as file size limits or firewalls that prevent these types of images from being sent. However, as a general matter, providing the magistrate with copies of the images is possible. Here, DeRespini had the images and there is no suggestion that he could not have presented them directly to the magistrates.[8] At worst, had the magistrates viewed the images and found probable cause lacking, DeRespini would have had to investigate further. (See *United States v. Zimmerman* (3d Cir. 2002) 277 F.3d 426, 437, fn. 7.)

Perhaps for these reasons, we are not aware of a case—and the parties have identified none—advising law enforcement generally *not* to include images of child pornography in warrant applications. Given the essential role of a neutral magistrate, "[w]e are troubled by the fact that the government did not present and the magistrate did not see the photos in question before the warrant issued." (*United States v. Smith, supra*, 795 F.2d at p. 847). More concerningly, DeRespini testified that he was taught *not* to include the images. (Cf. *Perkins, supra*, 850 F.3d at p. 1115 [agent similarly testified that the "general practice" was not

---

[8] We do not mean to imply that sending the images relieves the officer of his or her duties of providing sufficient facts and opinions to establish probable cause, but only that the magistrate should have the opportunity to view the images to confirm that he or she agrees with the officer's conclusion.

to provide copies of the images].)  We reiterate that officers should, whenever possible, include images of suspected child pornography in warrant applications, particularly where, as here, a subjective evaluation is necessary to determine whether the images' content is prohibited.

Of course, we also expect law enforcement officers, prosecutors, and courts to protect the privacy interests of the minors depicted in the suspected pornography.  (See § 964, subd. (a) [district attorney and court in each county, in consultation with law enforcement, must establish a mutually agreeable procedure to protect the confidentiality of victim information in search warrant applications].)  When a search warrant has been executed, the documents and records relating to the warrant become public after it is executed and returned or 10 days after issuance.  (§ 1534, subd. (a).)  Requests to seal should therefore be filed in conjunction with search warrant applications that contain suspected images of child pornography.  (See, e.g., *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1023 [trial court properly sealed portions of search warrant affidavit describing defendant's alleged sexual misconduct with two minors]; *People v. Hobbs* (1994) 7 Cal.4th 948, 963 [confidential informant information].)[9]

Having rejected Wadleigh's assertion that the warrant applications were per se inadequate without the images, we apply our

---

[9] The highly specific sealing procedures governing the filing of records filed or lodged with courts in civil and criminal cases generally (Cal. Rules of Court, rules 2.550, 2.551) do not apply to sealed search warrant affidavits where a mutually agreeable sealing protocol under Penal Code section 964, subdivision (a), is in place.  (See Advisory Com. com. on Cal. Rules of Court, rule 2.550 [rules 2.550, 2.551 "do not apply to records that courts must keep confidential by law," citing *Hobbs*].)

independent judgment to conclude that DeRespini's descriptions of the images established probable cause. "[A] detailed description, including the focal point and setting of the image, and pose and attire of the subject, will generally suffice" to establish probable cause. (*Brunette*, *supra*, 256 F.3d at p. 20; see also *Kongs*, *supra*, 30 Cal.App.4th at pp. 1754–1755 [applying similar and frequently used factors from *United States v. Dost* (S.D. Cal. 1986) 636 F.Supp. 828, 832].)

Here, as indicated by DeRespini's descriptions, the children's "legs-apart poses were sexually suggestive and unnatural." (*Kongs*, *supra*, 30 Cal.App.4th at p. 1755.)[10] The children were not nude, but were wearing "abbreviated attire," i.e., swimsuits and a ballerina outfit through which the children's genitalia could be discerned. (*United States v. Knox* (3d Cir. 1994) 32 F.3d 733, 744; see *Kongs*, at pp. 1755–1756 [nudity not required under section 311.4, subsection (d)(1)].) Although DeRespini did not explicitly so state, his descriptions imply that the images' focal points were the children's pubic areas. (See *Rowland*, *supra*, 82 Cal.App.5th at pp. 1107, 1119–1120 [children posed to emphasize their genitalia]; *United States v. Wiegand*, *supra*, 812 F.2d at p. 1244 [same].) Evaluating the "overall content" of the image descriptions, we conclude they established that the images exhibited the children's genitals or pubic areas for the sexual stimulation of the viewer. (*Kongs*, at pp. 1755–1757; see also *People v. Spurlock* (2003) 114 Cal.App.4th 1122, 1133–1134.)

_____

[10] *Kongs* was decided in a slightly different context—evaluating whether there was sufficient evidence to indict the defendant for violating section 311.11, subdivision (a), among other offenses. (See *Kongs*, *supra*, 30 Cal.App.4th at pp. 1752–1757.) Yet the same substantive analysis applies here, where we consider whether the images fall within the statutory definition of child pornography.

### 3. *Franks*

In *Franks*, the United States Supreme Court held that, where a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included . . . in [a] warrant affidavit," and then proves the statement was reckless or intentional, "the affidavit's false material [is] set to one side." (*Franks*, *supra*, 438 U.S. at pp. 155–156; see *People v. Panah* (2005) 35 Cal.4th 395, 456.) If "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded . . . ." (*Franks*, at p. 156; see *People v. Panah*, at p. 456.)

Wadleigh argues that DeRespini misrepresented the content of the first image. We, like the trial court, find DeRespini's description of that image inaccurate. But whether the inaccuracies reflected intentional misrepresentations or reckless disregard for the truth, or merely " 'inadvertence and inattention to detail' " (*Brunette*, *supra*, 256 F.3d at pp. 16, 20), we conclude the warrants survive *Franks* scrutiny.

Putting the first image to one side, the warrants established probable cause for the searches.[11] As discussed *ante*, the warrant applications described three images depicting individuals DeRespini concluded, based on his experience, were minors. DeRespini's factual descriptions of the three images indicated that the individuals in the

---

[11] Wadleigh suggests that a *Franks* inquiry would involve not only omitting the inaccurate description from the warrant applications, but also including the first image itself in the applications. Because no absolute rule required DeRespini to include the images in the warrant applications, we do not address this aspect of his argument.

images were posing unnaturally and in such a manner as to "exhibit[] [their] genitals or pubic . . . area[s] for the purpose of sexual stimulation of the viewer." (§ 311.4, subd. (d).) The applications also recounted that Wadleigh downloaded 23 images of suspected child pornography using his electronic accounts (and an additional 41 such images were discovered in the first search) and explained that individuals who view child pornography tend to collect and store such images indefinitely. These allegations established a fair probability that Wadleigh possessed child pornography and that evidence of his possession would be discovered in a search of his electronic accounts, devices, and storage items. The warrants were valid, notwithstanding any *Franks* issue with the first image.

### 4. *Leon*

Because we conclude that the warrant applications established probable cause and that the warrants should not be invalidated under *Franks*, we do not reach the good faith exception set forth in *Leon*. (*People v. Nicholls*, *supra*, 159 Cal.App.4th at p. 715.)

**DISPOSITION**

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
FINEMAN, J. *

---

* Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

| | |
|---|---|
| Trial Court: | Superior Court of San Mateo County |
| Trial Judge: | Honorable Richard H. DuBois |
| Counsel for Defendant and Appellant: | John Halley |
| Counsel for Plaintiff and Respondent: | Rob Bonta<br>Attorney General of California<br>Lance E. Winters<br>Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br>Eric D. Share<br>Supervising Deputy Attorney General<br>Brady Baldwin<br>Deputy Attorney General |